*Decision will be entered under Rule 50.*

ESTATE OF MILLARD D. HILL, DECEASED, MRS. EDITH B. HILL, EXECUTRIX, AND MRS. EDITH B. HILL, SURVIVING WIFE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF MILLARD D. HILL, DECEASED, MRS. EDITH B. HILL, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3076–70, 3077–70.   Filed March 21, 1973.

*Edwin P. Friedberg*, for the petitioners.
*Ocie F. Murray, Jr.*, for the respondent.

IRWIN, *Judge:* Respondent determined the following deficiencies and additions to tax against petitioners for the taxable years 1956 through 1960:

| Docket No. | Year | Deficiency | Additions to tax under sec. 6653(b) [1] |
|---|---|---|---|
| 3076–70 | 1959 | $64.69 | $655.65 |
| | 1960 | 134.54 | 936.14 |
| 3077–70 | 1956 | 3,329.00 | 1,664.50 |
| | 1957 | 2,869.82 | 1,434.91 |
| | 1958 | 1,248.96 | 1,337.78 |

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

Respondent has conceded that no part of any underpayment for the years 1959 and 1960 in which joint returns were filed was due to the fraud of the surviving wife, Edith B. Hill. The remaining issues to be decided are:

(1) Whether petitioner's motion to suppress evidence based upon a claim that respondent obtained certain records and documents through an illegal search and seizure should be granted;

(2) Whether any part of the deficiencies in income tax for each of the years 1956 through 1960, as determined by respondent, is due to fraud with intent to evade taxes;

(3) Whether assessment of the deficiencies and additions to tax for years in issue is barred by statute of limitations;

(4) Whether petitioners understated their gross income and overstated their allowable deductions for the years in issue.

*Issue 1. Illegal Search and Seizure*

### FINDINGS OF FACT

Some of the facts have been stipulated and they are so found. The exhibits attached to the stipulation are incorporated herein by this reference.

Petitioners are Edith B. Hill and the Estate of Millard D. Hill. Edith B. Hill is the surviving spouse of Millard D. Hill and is the executrix of his estate. At all relevant times Mrs. Hill resided in Raleigh, N.C. Hereafter the term petitioner shall refer to Mrs. Hill.

Millard D. Hill (Dr. Hill) was a medical doctor engaged in the practice of medicine from 1928 until his death on account of lung cancer on April 17, 1969.

In 1928 Dr. Hill married his first wife Thelma McCade. In December 1954 Dr. Hill and Thelma Hill separated, and they were divorced in October 1957. Dr. Hill married his second and surviving wife, Edith B. Hill, on September 13, 1958.

For the years 1956 through 1958 Dr. Hill filed timely individual income tax returns. For 1959 and 1960 Dr. Hill and petitioner filed joint income tax returns. For all these years the returns were filed with the district director of internal revenue, Greensboro, N.C. Respondent has no record of Dr. Hill's 1956 return.

For 1956 and 1957 Dr. Hill's income tax returns were prepared by Mrs. Hester B. Ellington. In each year Dr. Hill gave Mrs. Ellington the amount of his professional income over the telephone and provided her with a Form W-2 indicating the amount that he received as an officer of the North Carolina Medical Society. Mrs. Ellington obtained information regarding Dr. Hill's professional expenses from daybooks kept by Dr. Hill's nurse.

After preparing the 1957 return, Mrs. Ellington did not personally prepare Dr. Hill's later income tax returns because her husband's employer, the North Carolina Tax Department, objected to her engaging in preparing returns. For the years 1958 through 1960 Mrs. Ellington obtained Dr. Hill's income and expense information in the same manner that she had done in prior years; however, she merely prepared penciled summaries of this information. For 1958 Mrs. Ellington gave the summary of Dr. Hill's income and expenses to Kermit I. Cooper who prepared a return in pencil which he then gave to Mrs. Ellington for typing. After typing the 1958 return, Mrs. Ellington sent it to Dr. Hill for filing. For 1959 and 1960 Mrs. Ellington sent the summaries to Charles A. Field who prepared the returns in pencil. As before, Mrs. Ellington typed the 1959 and 1960 returns and sent them to Dr. Hill for filing.

During the years 1956 through 1960 Dr. Hill's records of charges to patients and payments received from patients were kept by Mrs. Clara R. Austin outside Dr. Hill's office. Mrs. Austin ran monthly adding machine tapes of Dr. Hill's professional receipts and, at the end of each year, furnished Dr. Hill with the amount of his total professional receipts for the year as shown by these tapes.

During these same years Mrs. Jeannette S. Barclay (Mrs. Barclay) was Dr. Hill's nurse. Included in Mrs. Barclay's duties, in addition to keeping daybooks of Dr. Hill's professional expenses, was the keeping of certain records consisting of yellow sheets of paper on which were entered the dates and amounts of each charge or collection, together with the names and addresses of the patients involved.

About every 2 or 3 days during the years in question, Mrs. Barclay mailed the original yellow sheets to Mrs. Austin at her residence. A carbon copy of these yellow sheets was retained in Dr. Hill's office. Mrs. Austin set up individual cards for patients, billed patients who charged their visits, and recorded in a composition book a record of Dr. Hill's fees.

In addition to the yellow sheets Dr. Hill would call Mrs. Austin to give her information on cash fees he received.

Internal Revenue Agent Thomas H. Hinson (Hinson) first met with Dr. Hill on May 1, 1961, regarding his Federal income tax liability for the year 1959. Dr. Hill told Hinson that Mrs. Ellington had his retained copies of returns filed for years prior to and subsequent to 1959 and would make them available to him. He also stated that Mrs. Austin had his records of professional receipts and patient cards for 1959, as well as years prior and subsequent thereto, and would make them available to him. Dr. Hill stated that he wished to cooperate in any way he could. He furnished Hinson with his duplicate yellow

journal sheets, his bank statements, and canceled checks for 1959 which Hinson took back to his office.

On May 4, 1961, Hinson visited Mrs. Ellington and copied Dr. Hill's professional gross receipt figures from the retained copies of his returns for the years 1956, 1957, 1958, and 1960. On that same day Hinson visited Mrs. Austin and obtained from her the professional gross receipt figures of Dr. Hill for the years 1956 to 1960, inclusive. Hinson took Mrs. Austin's adding machine tape for the year 1958 with him when he left her residence.

Prior to Hinson's visit to Mrs. Austin's home, Mrs. Barclay called her and told her that Hinson was coming by. Mrs. Barclay also told Mrs. Austin that Dr. Hill said for her to give Hinson any records which he asked for.

On May 11, 1961, Hinson again visited Dr. Hill and obtained the duplicate yellow journal sheets for the year 1958.

On May 11, 1961, Hinson referred the case to the Intelligence Division of the Internal Revenue Service for proper action. On November 30, 1962, Hinson and Special Agent John L. Bryan (Bryan) of the Intelligence Division visited Mrs. Austin and obtained from her records pertaining to Dr. Hill consisting of the adding machine tapes for the years 1957, 1959, and 1960, the composition books, and the original yellow sheets or cash receipts journal.

On December 10, 1962, Hinson and Bryan visited Dr. Hill at his office. Bryan identified himself and told Dr. Hill that he did not have to furnish anything or any information that could be incriminating. Bryan advised Dr. Hill further that if he so desired, they would return the records previously obtained from him. Dr. Hill stated that they could keep the information they had and that he was willing to cooperate and furnish any information that would be helpful in the investigation.

On May 9, 1963, Bryan and Hinson visited Dr. Hill and requested that he furnish his expenses books for the years 1956 to 1960, inclusive, and his bank statements and canceled checks for the years 1956, 1957, 1958, and 1960. Again Bryan informed Dr. Hill that he did not have to furnish any information or records that he did not wish to furnish. Dr. Hill indicated that he had no objection to furnishing these records. On May 10, 1963, Hinson returned to Dr. Hill's office and picked up the records requested. Additional bank statements and canceled checks for the year 1960 were furnished to the agents by Dr. Hill on May 15, 1963.

On October 23, 1963, all of the records, bank statements, and canceled checks previously obtained from Dr. Hill were returned to him.

On October 26, 1964, the grand jury returned a three-count indictment in the U.S. District Court for the Eastern District of North

Carolina, charging Dr. Millard D. Hill with filing income tax returns which were not true and correct for the taxable years 1958, 1959, and 1960 in violation of section 7206 of the Internal Revenue Code of 1954. Dr. Hill was not represented by counsel until after the indictment was returned.

On August 24, 1965, Dr. Hill, through his attroney, Edwin P. Friedberg, filed a motion in the U.S. District Court for the Eastern District of North Carolina seeking an order for the suppression of evidence and return of property seized in the case of *United States* v. *Millard D. Hill*, No. 142–64–CR. By this motion Dr. Hill sought to have books and records obtained from him and Mrs. Austin returned and to have all evidence obtained by respondent's agents during the course of their investigation from his books and records suppressed.

On January 18, 1968, U.S. District Court Judge John D. Larkins, Jr., signed an order denying Dr. Hill's motion to suppress evidence. Judge Larkins made the following conclusions of law:

1. That Millard D. Hill consented to the examination of his books and records of Agents Hinson and Bryan.

2. That the consent given by Millard D. Hill to the examination of his books and records was voluntarily and understandingly given.

3. That the consent given by Millard D. Hill to the examination of his books and records was not obtained by fraud or misrepresentation.

4. That the evidence so obtained should not be suppressed.

Dr. Hill, on January 22, 1969, entered a plea of nolo contendere to the charge set forth against him in all three counts of the indictment.

On January 22, 1969, the U.S. District Court for the Eastern District of North Carolina found Dr. Hill guilty as charged and entered its judgment of conviction against Dr. Hill in criminal action No. 142–64–CR.

### OPINION

Petitioner claims that the records, documents, and other evidence used by respondent in making his determination were obtained through an unreasonable search and seizure in violation of the fourth amendment to the U.S. Constitution. We have recently held in *Efrain T. Suarez*, 58 T.C. 792 (1972), that the protections encompassed in the fourth amendment to the U.S. Constitution are applicable in a civil tax proceeding and that evidence obtained in violation of the amendment may not be used at trial in this Court.

Respondent urges that petitioner's motion to suppress evidence be denied for two reasons. First, respondent contends that the legality of respondent's actions in obtaining Dr. Hill's records was fully adjudicated in his criminal tax evasion trial before the U.S. District Court which held the claim of unreasonable search and seizure to be ground-

less and that petitioners are collaterally estopped to relitigate the same issues before this Court. Second, respondent claims that Dr. Hill knowingly and voluntarily supplied respondent with the evidence claimed to be seized and thereby waived the protections of the fourth amendment.

It seems clear to us that the requirements for the use of collateral estoppel are met on the facts before us. The propriety of respondent's method of obtaining Dr. Hill's record was litigated and determined in the action in the District Court. Petitioner claims that the adverse District Court decision cannot be binding because it was "presumably" appealable; however, there is no evidence in the record that Dr. Hill filed a notice of appeal with the District Court within 10 days of the date of his conviction. See rule 4b, Fed. R. App. P. Without evidence that a timely appeal was taken we conclude that the decision of the District Court with respect to the search and seizure issue was final and binding upon the parties and those in privity with them. Accordingly, we hold that petitioner in her capacity as the executrix of Dr. Hill's estate is collaterally estopped from raising the search and seizure issue in this Court. *John W. Amos*, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965).

Despite our holding that Dr. Hill's estate is estopped from raising the unconstitutional search and seizure issue, we must still consider the propriety of respondent's taking of Dr. Hill's records. Because petitioner in her individual capacity was not a party to the criminal action against her husband, she cannot be bound by it. *Henry M. Rodney*, 53 T.C. 287 (1969).

We find petitioner's arguments a bit difficult to fathom. On the one hand petitioner claims that Dr. Hill's books and records were seized by respondent without his knowledge and consent; however, on the other, petitioner cites Dr. Hill's complete cooperation with respondent's agents as evidence of his honesty. In our view of the record Dr. Hill at all times intended to cooperate in respondent's investigation and supplied his records voluntarily.

From Hinson's first visit in May 1961 Dr. Hill knew of the ongoing investigation of his taxes by respondent. From the beginning of the investigation Dr. Hill willingly gave Hinson his records for the years presently in issue. Dr. Hill's voluntary action in giving respondent access to his books and records during a civil tax investigation constitutes a valid consent to a search, which carries with it the right to examine and photocopy the materials. *McGarry* v. *Riley*, 363 F. 2d 421 (C.A. 1, 1966), certiorari denied 385 U.S. 969 (1966). See also *United States* v. *Ruggeiro*, 425 F. 2d 1069 (C.A. 9, 1970), where it was held that respondent may obtain incriminating records through a summons

in civil action as long as a criminal action was not pending. At no time until Dr. Hill's attorney filed a motion to suppress evidence in the District Court in August 1965 did Dr. Hill object to respondent's use of his books and records despite having been warned in May 1963 that respondent was conducting a criminal investigation, that he could refuse to furnish any further records, and that respondent would return any records previously furnished.

Despite the clearly voluntary nature of Dr. Hill's furnishing of records petitioner contends that Dr. Hill could not have waived the protections of the fourth amendment because he was not represented by counsel throughout respondent's investigation until the indictment was returned against him. We note that Dr. Hill was informed of his constitutional protections by Special Agent Bryan, that Dr. Hill was educated and not indigent, and that respondent used no trick or deceit to obtain the records. With these facts we cannot conceive of a more apparent consent to a search. See *United States* v. *Ponder*, 444 F. 2d 816 (C.A. 5, 1971), certiorari denied 405 U.S. 918 (1972).

*Issue 2. Additions to Tax for Fraud*

### FINDINGS OF FACT

Complete records of Dr. Hill's professional receipts were kept outside of his office by Mrs. Clara R. Austin. These records included payments not otherwise reported in the records kept in Dr. Hill's office. The records kept by Mrs. Austin accurately reflected Dr. Hill's professional gross receipts to be the following:

| Year | Professional gross receipts |
|---|---|
| 1956 | $20, 036. 52 |
| 1957 | 23, 055. 35 |
| 1958 | 22, 516. 15 |
| 1959 | 27, 045, 38 |
| 1960 | 28, 049. 75 |

On his returns for the years in issue Dr. Hill reported the following to be the gross receipts from his medical practice:

| Year | Professional gross receipts per original return |
|---|---|
| 1956 | $17, 756. 00 |
| 1957 | 20, 055. 35 |
| 1958 | 17, 216. 55 |
| 1959 | 22, 045. 38 |
| 1960 | 22, 049. 75 |

On February 23, 1962, Charles A. Field filed amended income tax returns for 1958, 1959, and 1960 on behalf of Dr. Hill. These returns

were not signed by Dr. Hill, but they disclosed the following amounts of professional gross receipts:

| Year | Professional gross receipts per amended return |
|---|---|
| 1958 | $22,353.25 |
| 1959 | 26,806.38 |
| 1960 | 27,848.85 |

Dr. Hill's check for the balance of tax shown to be due accompanied the filing of the amended returns.

In addition to auditing Dr. Hill's records respondent attempted to reconstruct his professional income using the bank deposits and cash expenditures method. Using this method respondent determined Dr. Hill's professional gross receipts to be the following:

| Year | Professional gross receipts per bank deposits and cash expenditures |
|---|---|
| 1956 | $19,849.58 |
| 1957 | 23,723.77 |
| 1958 | 24,532.10 |
| 1959 | 26,592.13 |
| 1960 | 28,025.75 |

For the years 1956 through 1958 Dr. Hill received a salary as an officer of the North Carolina State Medical Society. The receipt of these salary payments was correctly reported on Dr. Hill's returns for these years.

During the years in issue Dr. Hill was credited with interest earned on funds on deposit in the following amounts:

| 1956 | 1957 | 1958 | 1959 | 1960 |
|---|---|---|---|---|
| $116.58 | $207.68 | $155.58 | $181.86 | $192.18 |

No interest income was reported on returns filed by Dr. Hill for the years 1956 through 1959. On his 1960 return $175.52 of interest income was reported.

In 1958 Dr. Hill purchased a residence from Charles F. Goodno (Goodno); however, after the sale to Dr. Hill was completed, Goodno was unable to vacate the house for a period of 4½ months. During that period Goodno paid rent to Dr. Hill at the rate of $105 per month, or a total of $472.50. Dr. Hill did not report any rental income on his return for 1958, nor did he take deductions for depreciation or insurance with respect to the residence purchased from Goodno.

During all of the years in issue Dr. Hill received annuity payments from the Fidelity Mutual Life Insurance Co. In 1956 Dr. Hill received $250 of such payments, and in each succeeding year he received $600 of annuity payments. Dr. Hill did not report any part of the annuity payments as income during the years 1956 through 1960. At his birthday nearest the date that the annuity payments started Dr. Hill was 55 years old.

Dr. Hill did not keep adequate records of his expenses related to his practice. Mrs. Barclay did keep a book in Dr. Hill's office which was supposed to contain a single-entry record of all expenses; however, many expenses were paid in cash and were either omitted from the office record or incorrectly entered.

During the years in issue Dr. Hill maintained an automobile which he used for both business and personal driving. Dr. Hill never owned more than one automobile at a particular time. In each year Dr. Hill took a deduction for automobile expenses which equaled the product of the number of miles which his car was driven during the year multiplied by $0.08. The only record which Dr. Hill kept concerning his business driving was a notation of the odometer reading of his car at the beginning of each year. The following chart represents the automobile expenses claimed by Dr. Hill in each year and the amount of such expense disallowed by respondent:

| Year | Amount claimed | Amount disallowed |
|---|---|---|
| 1956 | $1,446.64 | $144.66 |
| 1957 | 2,292.40 | 906.47 |
| 1958 | 1,502.56 | 150.26 |
| 1959 | 1,637.52 | 163.75 |
| 1960 | 1,536.32 | 153.63 |

In all years except 1957 respondent disallowed 10 percent of the claimed deduction as a personal expense. In 1957 Dr. Hill erroneously computed his automobile expense by using the total of miles driven for both 1956 and 1957. The amount of automobile expense allowed by respondent for 1957 is the average of the amounts allowed during the other years in issue.

For all of the years before the Court Dr. Hill claimed deductions for telephone expense equal to the cost of operating a phone in his home and a phone in his office. Dr. Hill kept no records which would indicate what part of his phone usage was devoted to business. Respondent allowed Dr. Hill a deduction for telephone expense equal to the full minimum rate for his office telephone plus one-half the minimum rate for his home telephone as set forth in the following schedule:

| Year | Amount claimed | Amount disallowed |
|---|---|---|
| 1956 | $443.82 | $282.12 |
| 1957 | 453.69 | 291.99 |
| 1958 | 488.98 | 327.28 |
| 1959 | 302.09 | 140.39 |
| 1960 | 336.26 | 168.26 |

After his separation from his first wife in December 1954, Dr. Hill paid his first wife $200 per month as alimony under an informal agreement set forth in a letter from his attorney to her attorney. The decree

granting Dr. Hill a divorce from his first wife in October 1957 specifically required Dr. Hill to make alimony payments. For 1956 through 1958 Dr. Hill took deductions for alimony payments of $2,400 in each year. Respondent made the following adjustments to such deductions:

| Year | Deduction claimed | Deduction disallowed | Deduction increased |
|------|-------------------|----------------------|---------------------|
| 1956 | $2,400 | $2,400 | |
| 1957 | 2,400 | 1,900 | |
| 1958 | 2,400 | | $28.80 |

In addition to the determinations described previously respondent made a number of adjustments to Dr. Hill's taxable income for the years in issue as described below:

| Year | Item | Deduction decreased | Deduction increased |
|------|------|---------------------|---------------------|
| 1956 | Charitable contribution | $2.45 | |
| | Intangible taxes | | $0.39 |
| 1957 | Interest deduction | | 44.78 |
| 1958 | Interest deduction | 90.45 | 14.53 |
| | Intangible taxes | | .47 |

During the years in issue Dr. Hill conducted a busy practice which catered to low-income patients. The fees that Dr. Hill charged for his services were modest, and a significant portion of his practice was devoted to patients from whom no fees were received.

During the course of respondent's investigation Dr. Hill made no attempt to conceal his true income and cooperated with respondent's agents in all respects.

### OPINION

Petitioner claims that respondent has failed to carry his burden of proof with respect to the additions to tax for fraud because most of the adjustments made by respondent concern minor items and because most of Dr. Hill's mistakes in preparing his returns are more easily attributable either to his lack of knowledge or to negligence than to an intent to cheat on his taxes. While we would agree that some of Dr. Hill's mistakes are fairly insignificant, that Dr. Hill may have felt honestly entitled to deduct his alimony payments, and that he may have been unaware reasonably of his duty to report interest and annuity income, there is no way to rationalize Dr. Hill's omissions of gross professional receipts for all the years in issue.

Petitioner does not dispute that Dr. Hill had gross receipts in each year substantially in excess of the amounts reported on his returns. The records kept by Mrs. Austin for Dr. Hill essentially corroborate respondent's determinations of unreported income in each year. In addi-

tion, petitioner does not seriously contend that Dr. Hill was not responsible for the omissions, and respondent's evidence quite clearly places the blame for the omissions on Dr. Hill. Essentially, petitioner asks us to believe that Dr. Hill either through honest mistake or negligence omitted professional gross receipts from his returns for 5 consecutive years in amounts which increased from $2,280.52 in 1956 to $6,000 in 1960. Petitioner has tried to convince us that Dr. Hill was a modest and honest man, but we cannot ignore the realities of his omissions of professional gross receipts.

Without cavil, "consistent failure to report substantial amounts of income over a number of years, standing alone, is effective evidence of fraudulent intent." *Schwarzkopf* v. *Commissioner*, 246 F. 2d 731, 734 (C.A. 3, 1957); *Kurnick* v. *Commissioner*, 232 F. 2d 678 (C.A. 6, 1956); *Anderson* v. *Commissioner*, 250 F. 2d 242 (C.A. 5, 1957); *John Harper*, 54 T.C. 1121 (1970). We do not think that any of the explanations or evidence offered by petitioner is forceful enough to overcome the strong evidence of fraudulent intent which inheres in 5 consecutive years of substantial omissions of income. Accordingly, we hold that at least a part of the deficiency in the income tax of Dr. Hill in each year was due to fraud, and we sustain respondent's imposition of the additions to tax under section 6653(b).

*Issues 3 and 4. Statutes of Limitation and Assessment*

OPINION

It follows from our holding that part of the deficiency in each year was due to fraud that respondent may assess the tax due at any time under section 6501(c) and that determination of the deficiencies for the years in issue is not in any way barred.

Of the numerous adjustments made by respondent to Dr. Hill's taxable income for the years in issue, petitioner only contests respondent's disallowance of alimony deductions taken by Dr. Hill for 1956 and 1957. In our findings of fact with respect to issue 2 we noted that Dr. Hill did in fact live apart from his first wife and that he did pay her alimony of $200 per month during the period of their separation until their final divorce in October 1957; however, we also noted that Dr. Hill's payments were made only pursuant to an informal agreement set forth in a letter from his attorney to his first wife's attorney.

Section 71(a)(2) requires a wife to include in her gross income (and section 215 permits a husband to exclude) amounts received by her under a written separation agreement. We have examined the letter sent by Dr. Hill's attorney to the attorney for his first wife, and we do not believe that it constitutes a written agreement. It is merely a uni-

lateral offer to make alimony payments and, more significantly, it is an offer to enter into a separation agreement. Although the result may be harsh in this case, we believe that Dr. Hill was not entitled to exclude the payments made to his first wife under section 71(a)(2).

Respondent's computation of Dr. Hill's taxable income for each of the years in issue was based in part upon his determination of Dr. Hill's professional gross receipts using the bank deposits and cash expenditures method. While the use of such indirect method to determine taxable income is entirely proper where the taxpayer either keeps no records or where the records are inaccurate, all the evidence indicates that the records of Dr. Hill's professional receipts kept by Mrs. Austin were completely reliable. In such case it is incumbent upon respondent to use a method which most accurately determines taxable income. *Bradstreet Co.* v. *Commissioner,* 65 F. 2d 943 (C.A. 1, 1933). Accordingly, we hold that the deficiencies herein should be determined using Mrs. Austin's totals for Dr. Hill's professional gross receipts for each year; however, the amount of any deficiency so determined may not exceed the amount stated in the notice of deficiency. See sec. 6214(a).

*Decisions will be entered under Rule 50.*