LEO GRUDIN and HARRIETTE GRUDIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grudin v. Commissioner
Docket No. 445-71.
United States Tax Court
T.C. Memo 1974-251; 1974 Tax Ct. Memo LEXIS 67; 33 T.C.M. (CCH) 1116; T.C.M. (RIA) 74251; September 23, 1974, Filed. Bruce I. Hochman, for the petitioners. Eddy M. Quijano, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined *68 deficiencies in the Federal income tax of petitioners in the amounts of $16,890.92, $15,544.34, $14,887.48, and $13,899.77 and additions to tax under section 6653(b), I.R.C. 1954, [1] in the amounts of $8,445.46, $7,772.17, $7,443.74, and $6,949.89 for the calendar years 1962, 1963, 1964, and 1965, respectively. The parties have by agreement disposed of all issues except whether petitioners for the calendar years 1962 and 1963 filed false or fradulent income tax returns with intent to evade tax so that the assessment and collection of the agreed deficiencies for those years are not barred, and whether part of the agreed underpayment of tax for the calendar years 1962 and 1963 is due to fraud so that petitioners are liable for the additions to tax for fraud under section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, were residents of Beverly Hills, California at the time of the filing of their petition in this case. Petitioners filed joint Federal income tax returns for the calendar years 1962, 1963, 1964, and 1965 with the district *69 director of internal revenue at Los Angeles, California. Leo Grudin (hereinafter petitioner) was licensed to practice dentistry in California in 1931. Since 1957 he has specialized in endodontics, root canal work. During the years 1962 through 1965 petitioner practiced his specialty at Beverly Hills, California and taught at the school of dentistry of the University of Southern California. In 1962 and 1963 he gratuitously devoted approximately five days a month to this teaching. He has been on the staff of the dental school since 1940 and was a clinical professor there in 1962 and 1963. Between 1942 and 1966 petitioner employed Mity B. Church (Mity) as his receptionist, dental assistant and bookkeeper. She was responsible for all the clerical and bookkeeping duties of the dental office which included the collection of fees from patients and the deposit of these collections to bank accounts, the recordation of gross receipts and disbursements and the preparation of checks in payment of office expenses. The office records consisted of an appointment book, patient cards, and a gross receipts and disbursements ledger. Each patient card recorded the date and type of services *70 rendered to that patient and the fee charged for such services. The ledger was set up with columns designed to reflect the gross receipts and disbursements of the practice which were recapitulated on a monthly and annual basis. In 1952 petitioner engaged the services of a certified accountant to prepare his income tax returns. The accountant at that time instructed Mity that she was to include all the gross receipts from the practice in the ledger. After the end of each calendar year Mity would provide the accountant either with this ledger or with tapes she had prepared from the gross receipts and disbursements ledger from which he would prepare petitioner's returns. Petitioner's returns for 1962, 1963, 1964, and 1965 were prepared by the accountant and the income from petitioner's dental practice in each of these years was prepared from tapes furnished to the accountant by Mity which she had prepared from the gross receipts and disbursement ledger. On his 1962 income tax return petitioner reported gross receipts from his dental practice of $53,719 and net profit from this practice of $30,986.04. He reported approximately $2,400 of oil royalties less depletion of approximately *71 $650, approximately $2,700 of dividends and bond interest and approximately $750 interest from savings and loan institutions, a net capital loss from the sale of stocks of approximately $900, and partnership losses of approximately $4,000. On his 1963 return petitioner reported taxable income of $35,127.36 composed of a net profit from his dental practice of $26,057.51 ($51,622.25 gross receipts less $25,564.74 expenses), dividends and bond interest of approximately $4,300, oil royalties of approximately $1,850 less approximately $500 depletion, interest from savings and loan institutions of approximately $1,100, capital gains from the sale of stocks of approximately $3,600, and a section 1202 deduction of approximately $1,000. Petitioner signed his 1962 return certifying that he had examined it on April 11, 1963, and signed his 1963 return similarly certifying on April 6, 1964. On October 25, 1961, petitioner opened a checking account, Account No. 106-372 (hereinafter referred to as the business account), at City National Bank of Beverly Hills, Beverly Hills, California.He maintained this business account during 1962 through 1965 and made deposits thereto as follows: 1962
$55,859.00
1963
52,847.50
1964
68,493.50
1965
95,293.36
*72 On November 9, 1961, petitioner opened a checking account, Account No. 096-563 (hereinafter referred to as the personal account), at City National Bank of Beverly Hills. This account was opened at the suggestion of Mity who stated that a separate account would facilitate segregating petitioner's receipts and disbursements with respect to stocks and bonds from those of his dental practice. This personal account was maintained during 1962 through 1965 and deposits thereto and disbursements therefrom made as follows: Deposits
Disbursements 1962
$34,515.23
$32,386.23
1963
30,498.50
34,992.20
1964
29,606.29
23,974.26
1965
37,418.19
34,301.65
Petitioners received and failed to report on their income tax returns gross receipts from petitioner's dental practice in the following amounts for the years indicated: 1962
$29,110.00
1963
25,358.62
1964
28,070.00
1965
19,255.00
The amount of the unreported dental receipts as set forth above were deposited to petitioner's personal account and were not recorded in petitioner's gross receipts and disbursements ledger kept for his dental practice. The total funds available and the total *73 funds available other than unreported dental receipts for disbursements by petitioner from his personal account during the years 1962 through 1965 were as follows: 1962
1963
1964
1965 Balance Jan. 1
$ 4,163.77
$ 6,292.77
$ 1,799.07
$ 7,431.10
Deposits 34,515.23
30,498.50
29,606.29
37,418.19
Total funds available for disbursement
38,679.00
36,791.27
31,405.36
44,849.29
Less: Unreported dental receipts 29,110.00
25,358.62
28,070.00
19,255.00
Total funds available for disbursement other than unreported dental receipts $ 9,569.00
$11,432.65
$ 3,335.36
$25,594.29
The accountant who prepared petitioner's tax returns for the years 1962 through 1965 did not audit petitioner's books of account or bank statements for those years and did not discuss the amount of petitioner's receipts from his dental practice with either of petitioners. Petitioner did not actively participate in maintaining his financial records. He did not reconcile the bank statements of either his personal or business account, but relied on Mity to perform these tasks.He did not keep a record of the balances of these accounts, but when he needed this information *74 would obtain it from Mity. When he desired to make purchases of stock petitioner inquired of Mity whether there were sufficient funds in his personal account to cover the cost of the stock he wished to buy. Petitioner had two brokerage accounts, a margin account and a cash account. Generally the proceeds from the sales of stocks would remain in these accounts for future purchases. However petitioner did withdraw funds occasionally from the cash account and infrequently from the margin account. Petitioner on his 1962 return reported dividends from 23 different corporations and reported 19 sales of stock for a total sales price of $62,897.08. Eight of these sales were of stock which had been purchased in 1962. In 1963 petitioner reported dividends paid by 31 different corporations and reported 19 sales of stock for a total sales price of $115,135.31. Of these sales, 5 were of stocks purchased in 1962 and 13 of stocks purchased in 1963. Most of the $32,386.23 withdrawn by petitioner from his personal account in 1962 and the $34,992.20 withdrawn from this account in 1963 were used, in addition to the sales price received for stocks sold, to purchase additional stock. Petitioner *75 relied to a great extent on the advice of his broker with respect to when to buy and sell his stocks and what stocks to buy or sell. However, he kept a record of his complete stock transactions and at least monthly he personally reviewed the performance of his investments. In the late summer of 1962 or 1963 Mity informed petitioner that she was and had been depositing dental receipts which she had not entered on the office ledger into his personal account. The statement was made by Mity to petitioner after an inquiry by petitioner of Mity as to the availability of funds in his personal account for the purchase of stocks. After having been told by Mity that not all of the dental receipts had or were being included in the office ledger record so as to be reported on the tax returns which would be prepared from this source, petitioner did not demand that in the future all receipts be posted to the ledger and took no steps to ensure that all receipts from his dental work were reported in his Federal income tax returns. In fact, petitioner knowingly permitted the continued unreporting of some dental receipts for the years 1963, 1964, and 1965. On April 29, 1969, petitioner was convicted *76 on a plea of guilty of willfully and knowingly attempting to evade income tax owed by him for the year 1964 in violation of section 7201. Respondent in his notice of deficiency dated December 16, 1970, determined that there was due from petitioner additions to tax for fraud under the provisions of section 6653(b). Petitioner alleged that deficiencies for the years 1962 and 1963 were barred by the statute of limitations and respondent in his answer alleged that deficiencies for these years were not barred under the provisions of section 6501(c) (1) since petitioners had filed false and fraudulent returns for these years. ULTIMATE FINDINGS OF FACT Part of petitioner's dental receipts were omitted from petitioners' Federal income tax returns for the calendar years 1962 and 1963 with the fraudulent intent to evade income tax for those years. OPINION The issue here is purely factual. Both parties recognize that for each of the years 1962 and 1963 the statute of limitations bars the assessment and collection of the agreed upon deficiency unless respondent has shown by clear and convincing evidence that petitioners filed a false and fraudulent return with intent to evade tax. *77 It is also incumbent on respondent to show by clear and convincing evidence that some part of the agreed underpayment of tax is due to fraud to be entitled to the addition to tax for fraud under section 6653(b). [2]Nathaniel M. Stone, 56 T.C. 213, 220 (1971). *78 The record is clear that petitioners failed to report substantial amounts of income from petitioner's dental practice in each of the years 1962 through 1965. Such persistent and substantial understatements of income over a period of 4 successive years is some evidence of fraud. Estate of Millard D. Hill, 59 T.C. 846, 856 (1973). This fact alone is not generally sufficient to satisfy respondent's burden but repeated understatements in successive years when coupled with other circumstances "showing intent to conceal or misstate taxable income, present a basis from which fraud may be inferred." Estate of Ernest Clarke, 54 T.C. 1149, 1162 (1970). There are numerous circumstances present in the instant case in addition to petitioners' consistent failure to report substantial amounts of income over 4 successive years which clearly show a fraudulent intent by petitioner to evade tax for the years 1962 and 1963. The evidence shows that Mity specifically told petitioner no later than late 1963 that some receipts from his dental practice were not being recorded in the receipts ledger and consequently would not be reported in petitioners' Federal tax returns which *79 were prepared from that ledger. Mity's testimony was clear that she told petitioner about the omissions no later than 1963. In each of the years 1962 and 1963 income from petitioner's dental practice was grossly understated in his return. The amounts of $29,110 and $25,358.62 were unreported for 1962 and 1963, respectively. These amounts approximated half of the net income from petitioner's dental practice during each of these years. Even though petitioner left the bookkeeping to Mity, he was aware of the amount of his practice and the charges made for his services. The original purpose for establishing the personal account was to deposit dividends, bond interest, and gains from stock transactions. Dividends and bond interest were $2,700 in 1962 and $4,300 in 1963, and the net gains from stock transactions were nil in 1962 and $3,600 in 1963. The proceeds from the sale of stocks usually remained in petitioner's brokerage accounts until other stocks were purchased. Petitioner personally maintained the record of his stock transactions. Petitioner drew checks on his personal account in the amounts of $32,386.23 and $34,992.20 during 1962 and 1963, respectively, primarily *80 for the purchase of stock. These disbursements were so greatly in excess of his income from stocks and bonds during each of these years that it is unrealistic to believe that petitioner could have believed that the funds in his personal account came only from his stock dividends and gains and from bond interest. Petitioner's explanation for the omission of some dental receipts from his returns for 1962 and 1963 was that he was ignorant of the understatements of professional income until informed thereof by Mity in the summer of 1964. Petitioner testified that Mity gave him this information when he had asked her if there were funds in his personal account for a stock purchase. Petitioner was the only person authorized to draw checks upon his business and his personal accounts. Petitioner must have become aware in 1962 that money other than approximately $5,500 of receipts other than from his dental practice were being deposited in his personal account in 1962. The logical inference from the record is that petitioner realized in 1962 that he was drawing checks on his personal account in excess of the amount available from his opening balance plus his investment income, and he *81 asked Mity where these extra funds came from and was told the source of these funds. From observing Mity testify we conclude that she was desirous of testifying as favorably for petitioner as she felt she truthfully could. Mity never deviated from her testimony that she told petitioner of her failure to include all receipts in the business ledger and her deposit of some of these receipts in his personal account before the end of 1963 and perhaps as early as late 1962. Since we believe Mity's testimony, we do not accept petitioner's contention that he did not learn of these facts until the summer of 1964 or believe his testimony to that effect. In our view it is patently unreasonable that petitioner was so unaware of his financial situation in 1962 and 1963 that he did not know some of the disbursements from his personal account during those years represented dental receipts since there was no other source from which the substantial sums of monies which he withdrew from his personal account in those years could have been derived. The evidence as a whole is clear and convincing that petitioner realized that some of his dental receipts were not reported in his income tax returns *82 for 1962 and 1963 when they were filed. Petitioner was a professional man and held a position on the faculty of a respected educational institution. His high level of intelligence and education, coupled with the evidence of lack of a source for the major portion of the funds in his personal account other than from his dental practice, negates petitioner's claim of ignorance of the understatements of income in the returns for the years at issue. Moreover, if petitioner had been honestly unaware of the omissions of income in his 1962 and 1963 returns as he has claimed, the only reasonable course of action upon his discovery of this mistake would have been to seek advice as to the proper method of rectifying these understatements of income in prior years. Petitioner did not seek any counsel and did not amend his returns for the years 1962 and 1963. Petitioner took no steps to ensure that all dental receipts were reported in the returns filed for years subsequent to 1963. In fact, petitioner understated the amount of his dental receipts in his returns for 1964 and 1965 and was convicted on a plea of guilty to willfully and knowingly attempting to evade tax owed by him for 1964. *83 In our view the record as a whole establishes by clear and convincing evidence that petitioner filed false and fraudulent returns for the calendar years 1962 and 1963 with intent to evade tax, and some of the underpayment of tax for these years is due to fraud. It therefore follows that the statute of limitations does not bar the assessment and collection of the agreed upon deficiencies in tax for these years and petitioner is liable for the additions to tax under section 6653(b). Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * * (c) Exceptions. - (1) False return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE (a) Fraud. - In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.↩