WILLIAM STINSON, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stinson v. Commissioner
Docket No. 4683-73.
United States Tax Court
T.C. Memo 1975-269; 1975 Tax Ct. Memo LEXIS 104; 34 T.C.M. (CCH) 1159; T.C.M. (RIA) 750269; August 20, 1975, Filed Wilbur P. Trammell, for the petitioner. Louis J. Zeller, Jr., for the respondent. FORRESTER
MEMORANDUM *105 FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined the following deficiencies in and additions to petitioner's Federal income taxes: TYE
Deficiency
Sec. 6653 (b) [1] Penalty
12/31/63
$ 3,121.90
$ 1,560.95
12/31/64
4,218.43
2,109.21
12/31/65
3,511.80
1,755.90
12/31/66
5,321.05
2,660.52
The issues for our decision are as follows: (1) Whether petitioner fraudulently understated his income for any of the years before us so that respondent, because of section 6501(c)(1), is not precluded by the normal three-year statute of limitations from determining deficiencies and additions to tax as to such year or years; (2) If issue (1) is decided in respondent's favor, what is the amount of any understatement of income by petitioner in such year or years, as to which respondent may assess deficiencies and additions to tax because of fraud; (3) If issue (1) is decided in respondent's favor, whether petitioner could claim the income tax rates provided for married couples filing joint returns. FINDINGS OF FACT Some of the facts *106 have been stipulated and are so found. William Stinson, Jr. resided in Buffalo, New York, at the time the petition herein was filed. He filed individual income tax returns for his 1963 through 1966 taxable years with the District Director of Internal Revenue, Buffalo, New York. During the years 1963 through 1966, petitioner operated a retail liquor store in Buffalo, New York, as a sole proprietorship. In 1964, petitioner opened a coin-operated laundry and in 1966 he acquired an undisclosed amount of rental real property. For his liquor store, petitioner maintained a cash receipts book in which he recorded each day the amount of the sales made on that day. Also among petitioner's liquor store records was a ledger book, prepared at the end of each year by his accountant of almost 20 years standing, listing purchases made and expenses incurred during the year in connection with the business. Petitioner's accountant would prepare this book from check stubs given him by petitioner. If the accountant was unsure as to whether a particular check was for a personal or a business item, he would call petitioner who would then tell him for what reason the check had been written. Petitioner's *107 Federal income tax returns for each of the years before us were also prepared by his accountant. The accountant would merely record on petitioner's Schedule C the gross receipts figure for the year given him by petitioner. Such figure was not checked by the accountant either against petitioner's cash receipts book, or against petitioner's bank statements. On numerous occasions, the accountant suggested to petitioner that he have initiated a more complete accounting procedure for his various businesses, but such advice was not acted upon by petitioner. During the years before us, the gross receipts and operating expenses of petitioner's businesses, figures as to which petitioner was aware, were as follows: Gross Receipts
Expenses
Net Profit
1963
$ 228,110.91
$ 211,868.15
$ 16,242.76
1964
271,381.24
248,524.87
22,856.37
1965
260,509.20
242,513.42
17,995.78
1966
273,910.90
255,592.09
18,318.81 Petitioner's Federal income tax returns for those years, however, recorded the following amounts of the above items: Gross Receipts
Expenses
Net Profit
1963
$ 223,110.91
$ 211,868.15
$ 11,242.76
1964
260,061.24
251,278.53
8,782.71
1965
250,509.20
242,513.42
7,995.78
1966
272,505.65
264,457.39
8,048.26
*108 During the years 1962 through 1966, petitioner's assets and liabilities were as follows: ASSETS
12/31/62
12/31/63
12/31/64
12/31/65
12/31/66
Cash on Hand
Not
$ 8,192.30
$ 9,190.31
$ 10,990.31
$ 11,930.10
Established
Cash in Banks
$ 25,878.16
46,250.32
55,216.48
50,837.16
48,016.52
Mortgage
1,500.00
1,500.00
0
0
0
Receivable
Inventory
9,962.43
10,732.48
13,348.72
12,877.91
12,978.42
(Liquor)
Stock
6,951.71
8,108.21
1,704.64
3,854.48
2,183.00
Investment
Real Property
Investment: 102 Donaldson
10,879.28
10,927.36
0
0
0
44 Agassiz
0
0
25,413.09
25,510.64
25,581.50
Circle
Improvements
0
0
3,484.84
6,532.42
7,687.42
(44 Agassiz)
289 Genesee
0
0
11,373.75
11,373.75
11,682.04
St.
134 William
14,469.96
14,438.77
16,436.82
16,483.53
16,440.78
St.
589 E. North
0
0
0
0
4,500.00
St.
19-21 Arsenal
0
0
0
0
300.00
Business
3,600.00
3,600.00
13,940.00
14,430.00
14,430.00
Equipment
Household
0
871.67
12,155.55
12,672.15
14,885.96
Furnishings
Automobiles
10,400.00
10,400.00
6,714.65
6,100.00
10,192.40
TOTAL ASSETS
Not
115,021.11
168,978.85
171,662.35
180,808.14
Established
LIABILITIES
Outstanding
$ 200.47
$ 763.47
$ 9,269.93
$ 247.46
$ 150.24
Checks
Accounts
33,530.58
49,370.97
50,207.03
56,504.24
48,885.51
Payable
Mortgages
33,093.43
31,732.57
47,215.19
45,482.32
45,776.64
Payable
Loans Payable
0
3,974.29
24,885.68
20,606.19
19,608.12
Reserve for
2,986.50
3,669.50
5,653.07
8,650.52
11,971.14
De-
preciation
TOTAL
$ 69,810.98
$ 89,510.80
$ 137,230.90
$ 131,490.73
$ 126,391.65
LIABILITIES
*109 Other expenditures, including nondeductible losses and non-taxable gains which petitioner incurred from 1963 to 1966, are as follows: 1963
1964
1965
1966
Personal Living Expenses
$ 8,445.10
$ 8,391.90
$ 9,070.59
$ 9,819.22
Federal Income Tax Paid
855.00
2,410.00
0
0
Itemized Deductions
1,000.00
1,792.00
2,420.00
2,306.00
Itemized Deductions (ex-
1,000.00
1,767.00
2,305.00
2,176.00
cluding sales tax)
Additional Itemized De-
0
471.17
981.46
864.04
ductions (not on re-
turns, but subsequently
allowed by respondent)
Exemption (each $ 600)
4,200.00
4,200.00
4,200.00
4,200.00
Loan Repayment
100.00
100.00
0
0
Nondeductible Losses
0
4,242.85
914.65
0
Nontaxable Gains
0
2,183.69
0
140.00
Petitioner's wife earned no income during the years before us, and petitioner did not receive any nontaxable amounts--such as gifts and inheritances--from any source. On November 9, 1967, petitioner was visited by a revenue agent in connection with an audit of petitioner's 1965 taxable year. At that time, petitioner told the agent that his cash receipts book for 1965 and all prior years had been destroyed in a fire at his store. *110 Approximately a year later, however, another of petitioner's accountants submitted to the respondent cash receipts books allegedly maintained by petitioner during 1965 and 1966 for his liquor store. When respondent's agent asked petitioner for the register tapes which would verify the entries made in the books, petitioner, at that time, told the agent that such were with his accountant. Such tapes were never produced, however, it being petitioner's explanation, subsequently, that such tapes had been destroyed in the fire at his store. Also, in 1968, petitioner gave to respondent a book allegedly recording the cash receipts of petitioner's coin-operated laundry. For 1964, such book recorded approximately $ 2,200 of gross receipts, yet petitioner's Federal income tax return for such year reported only $ 1,680 of gross receipts for the laundry. Such discrepancy is unexplained in the record before us. For his 1963, 1964, 1965 and 1966 taxable years, petitioner reported, on his Federal income tax returns, $ 6,043, $ 2,790, $ 1,432 and $ 1,630, respectively, of taxable income. In his statutory notice of deficiency, which was issued on April 13, 1973, [2] respondent, utilizing the net worth *111 method, increased petitioner's taxable income for the above years in the amounts of $ 8,195.10, $ 13,370.51, $ 12,995.70 and $ 17,227.90, respectively. He further determined fraud penalties for each year, pursuant to section 6653(b). Respondent also determined that Mildred Stinson had never elected to file a joint return with petitioner for any of the years here before us and that, hence, petitioner must utilize the rates applicable to married taxpayers filing separate returns. OPINION The first issue which we must decide is whether respondent has established that petitioner fraudulently understated income for his 1963, 1964, 1965 and 1966 taxable years. This issue is of central importance in the instant case because respondent issued his statutory notice of deficiency as to these years outside the normal three-year statute of limitations, section 6501(a), and, except for the taxable year 1966, outside the period allowed by section 6501(e)(1)(A). [3] Thus, it is incumbent upon respondent to establish fraud on the part *112 of the petitioner in order that he may become entitled to the unlimited period of assessment provided by section 6501(c)(1). [4] We find and hold that respondent has established by clear and convincing evidence, which is the standard respondent must meet in fraud cases, Arlette Coat Co.,14 T.C. 751, 756 (1950); section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure, that petitioner fraudulently understated income on his returns for the 1963 through 1966 taxable years. *113 In the instant case respondent has reconstructed petitioner's taxable income utilizing the now familiar net worth method of computation. With many of petitioner's books unavailable, and with those provided not capable of being tested for accuracy by respondent, we think it was proper for respondent to employ a net worth calculation. Morris Lipsitz,21 T.C. 917, 931 (1954), affd. 220 F. 2d 871 (4th Cir. 1955), cert. denied 350 U.S. 845 (1955); Harry Gleis,24 T.C. 941, 949 (1955), affd. 245 F. 2d 237 (6th Cir. 1957); see Hollandv. United States,348 U.S. 121 (1954). On the basis of the facts contained in our findings above, we find that a net worth calculation clearly establishes that petitioner understated his taxable income by the following amounts for the years indicated: 1964
$ 11,512.53
1965
11,680.45
1966
17,099.65 [5]
*114 As to petitioner's 1963 taxable year, respondent's net worth statement does not establish the proper taxable income figure because, as we have found above, respondent has failed to establish petitioner's cash on hand and therefore his net worth as of the last day of 1962 by clear and convincing evidence. [6] However, we have found above that petitioner understated his gross receipts for 1963 by $ 5,000, an understatement which translates into a failure to report $ 5,000 of taxable income for that year. Thus, for each of the years before us there were substantial understatements of taxable income by petitioner. It is now clear that a consistent failure to report substantial amounts of income over a number of years is in itself highly persuasive evidence of fraudulent *115 intent. Schwarzkopf v. Commissioner,246 F. 2d 731, 734 (3d Cir. 1957), affg. on this issue a Memorandum Opinion of this Court; Estate of Millard D. Hill,59 T.C. 846, 856 (1973); John Harper, 54T.C. 1121, 1139 (1970); Anderson v. Commissioner,250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue a Memorandum Opinion of this Court, cert. denied 356 U.S. 950 (1958). Furthermore, we are convinced that petitioner was aware that he understated his income on the returns filed for each of the years before us. While petitioner contends that his return was prepared each year by an accountant, it was he who would provide such accountant with his gross receipts figures for the year. And, as we have found above, his returns for each of the years before us reported a lower gross receipts figure than petitioner knew was accurate for the given year. On brief petitioner attacked the reliability of the financial statements he filed for the years before us with his bank in Buffalo. It was from such financial statements that we made a number of our findings of fact above. The only evidence impugning the validity of such financial *116 statements, however, was petitioner's testimony that the asset values recorded on such statements may have been inflated. The record is barren of any evidence to indicate that in other respects (such as amounts of gross receipts, operating expenses, cash on hand and in the bank) these statements were inaccurate, and we think our limited reliance on them is entirely proper. Taking into account these and all the other facts in the record before us, we hold that respondent has established, by clear and convincing evidence, that petitioner's Federal income tax returns for his 1963 through 1966 taxable years fraudulently understated income and, hence, that respondent's deficiency notice as to such years was valid. See section 6501(c)(1). [7]
Having so held, we proceed next to the issue of the amount of petitioner's understatement of taxable income for the years before us. We have found above that petitioner understated taxable income for the years before us in the amounts of $ 5,000, *117 $ 11,512.53, $ 11,680.45 and $ 17,099.65. We thus uphold respondent's determination of deficiencies resulting from petitioner's failure to report these amounts. Because we have found above that petitioner's understatements were due, at least in part, to fraud, we also uphold respondent's determination as to section 6653(b) penalties. Petitioner has not contested respondent's determination that he must use the tax rates for married individuals filing separate returns. Hence, petitioner having apparently conceded the issue, we uphold this determination of respondent. Decision will be enteredunder Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. On April 11, 1970, petitioner executed an agreement extending the statute of limitations for assessment as to the 1966 taxable year until December 30, 1970.↩
3. (e) Substantial Omission of Items.--Except as otherwise provided in subsection (c)-- (1) Income Taxes.--In the case of any tax imposed by subtitle A-- (A) General Rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * * ↩
4. (c) Exceptions.-- (1) False Return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.↩
5. ↩
12/31/62
12/31/63
12/31/64
12/31/65
12/31/66
Net Worth
(Total Assets
Not
$ 25,510.31
$ 31,747.95
$ 40,171.62
$ 54,416.49
minus
Established
Total
Liabilities)
Less: Prior
Not
Not
$ 25,510.31
$ 31,747.95
$ 40,171.62
Year's Net Worth
Established
Established
Increase in Net
Not
Not
6,237.64
8,423.67
14,244.87
Worth
Established
Established
Adjustments to
Net Worth
Increase
Additions: Personal Living
8,445.10
8,391.90
9,070.59
9,819.22
Expenses
Federal Income
855.00
2,410.00
0
0
Tax Pay-
ments
Itemized
1,000.00
1,767.00
2,305.00
2,176.00
Deductions (ex-
cluding sales
tax)
Nondeductible
0
4,242.85
914.65
0
Losses
Subtractions: Nontaxable gains
0
2,183.69
0
140.40
Additional
0
471.17
981.46
864.04
Itemized De-
ductions
Loan Repayment
100.00
100.00
0
0
Corrected
Not
20,294.53
19,732.45
25,235.65
Adjusted Gross
Established
Income
Less: Exemptions
4,200.00
4,200.00
4,200.00
4,200.00
Itemized
1,000.00
1,792.00
2,420.00
2,306.00
Deductions
Correct Taxable
Not
14,302.53
13,112.45
18,729.65
Income
Established
Less: Taxable Income
6,043.00
2,790.00
1,432.00
1,630.00
Per Return
Unreported
Not
11,512.53
11,680.45
17,099.65
Taxable Income
Established
6. This defect is overcome for the other years in issue by contemporaneous statements furnished to his bank by petitioner in order to justify his line of credit and which show his cash on hand. Petitioner not only has not claimed any cash in addition to the amounts shown, but has inferred that the items on said statements may be inflated by testifying that he used, "my personal [values] * * * to make them look good."↩
7. Because of our finding of fraud, we need not decide whether respondent could have availed himself of section 6501(e), insofar as his statutory notice pertained to petitioner's 1966 taxable year.↩