**UNITED STATES of America, Plaintiff,**

v.

**Frank COSTELLO, Defendant.**

United States District Court
S. D. New York.

Sept. 26, 1956.

See also D.C., 142 F.Supp. 325.

Paul W. Williams, U. S. Atty., for the Southern Dist., of N. Y., New York City, for United States, Alfred P. O'Hara, Earl J. McHugh and Edwin J. Wesely, Asst. U. S. Attys., New York City, of counsel.

Hays, St. John, Abramson & Heilbron, New York City, Edward Bennett Williams, Washington, D. C., for defendant, Robert Cole, New York City, of counsel.

PALMIERI, District Judge.

I am called upon to decide whether the Government may call the defendant as a witness against himself in an action to denaturalize him.

The defendant was naturalized by an order of this court on September 10, 1925. On October 22, 1952, the United States Attorney filed a petition to cancel his naturalization on the ground of illegality and fraud in its procurement in violation of the Nationality Act of 1906, June 29, 1906, c. 3592, § 4, 34 Stat. 596.

The trial of this action began before me on September 25, 1956. Almost at the outset of the trial, Government counsel requested the defendant to take the witness stand. The defendant's counsel objected on the ground that to compel the defendant to be a witness against himself in these proceedings and to procure out of his own mouth evidence used to denaturalize him would contravene the

constitutional guarantee vouchsafed him by the Fifth Amendment of the Constitution of the United States.[1]

The Government asserts its right to call the defendant as a witness upon this trial on the ground that this is not a criminal proceeding and that, therefore, the defendant cannot properly claim the protection of the Fifth Amendment. Government counsel did not accept my suggestion that the trial continue upon other evidence pending my decision of this question.

The issue thus raised is one of far-reaching importance. I have been unable to find any authoritative holding on this issue. Indeed, it appears to have been left open by the Supreme Court in two recent cases. United States v. Minker, 1956, 350 U.S. 179, 76 S.Ct. 281; Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497.

In United States v. Minker, supra, the controlling issue presented was whether section 235(a) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 198, 8 U.S.C.A. § 1225(a), empowered an immigration officer to subpoena a naturalized citizen who is the subject of an investigation by the Service, where the purpose of the investigation was to determine if good cause existed for the institution of denaturalization proceedings under section 340(a) of the Act, 8 U.S.C.A. § 1451(a). The Court held there was no such grant of power, concluding its opinion with the following reservation, 350 U.S. at page 190, 76 S. Ct. at page 288:

> "Since this is so, we are not called upon to consider whether Congress may empower an immigration officer to secure evidence, under the authority of a subpoena, from a citizen who is himself the subject of an investigation directed toward his denaturalization."

In his concurring opinion in the Minker case, however, Mr. Justice Douglas had this to say, 350 U.S. at page 197, 76 S.Ct. at page 291:

> "When we deal with citizenship we tread on sensitive ground. The citizenship of a naturalized person has the same dignity and status as the citizenship of those of us born here, save only for eligibility to the presidency. He is a member of a community included within the protection of all the guarantees of the Constitution. Those safeguards would be imperiled if prior to the institution of the proceedings the citizen could be compelled to be a witness against himself and furnish out of his own mouth the evidence used to denaturalize him. I would require the Government to proceed with meticulous regard for the basic notions of Due Process which protect every vital right of the American citizen."

The language in Ullmann v. United States, supra, supports Justice Douglas' view that the constitutional guarantees are not limited to trials historically called criminal. The Court, in deciding the extent to which the privilege against self-incrimination was displaced by the Immunity Act of 1954, 68 Stat. 745, 18 U.S.C. (Supp. II) § 3486, stated, "* * * since the Immunity Act protects a witness who is compelled to answer to the extent of his constitutional immunity, he has of course, when a particular sanction is sought to be imposed against him, the right to claim that it is *criminal in nature.*" 350 U.S. at page 431, 76 S.Ct. at page 503. (Emphasis added.)

In this very action the Government sought to examine the defendant before trial by deposition. The defendant resisted this examination on a number of grounds. One of them was the assertion of his privilege against self-incrimination. The questions propounded by the Government upon the pre-trial examination were considered by the Court of Appeals for this circuit which concluded

---

[1]. "nor shall any person * * * be compelled in any criminal case to be a witness against himself * * *."

that the defendant had shown no reasonable basis for the fear of self-incrimination. Costello v. United States, 2 Cir., 222 F.2d 656, certiorari denied 1955, 350 U.S. 847, 76 S.Ct. 62.

The impact of this decision would seem to be that the very procedure here sought to be availed of by Government counsel was there approved, at least by implication. I have examined the record on appeal and it was clear that the objection now made was not briefed; and there was no indication that the Court of Appeals considered it. See also United States v. Lustig, D.C.S.D.N.Y.1954, 16 F.R.D. 138. I am aware that there are decisions which go far in the direction of classifying a denaturalization action as a civil action in equity for many purposes. A defendant is not entitled to a jury trial. United States v. Mansour, D.C.S.D.N.Y.1908, 170 F. 671 affirmed, 1912, 226 U.S. 604, 33 S.Ct. 217, 57 L.Ed. 378. The criminal statute of limitations does not apply to an action of this type. Sourino v. United States, 5 Cir., 86 F.2d 309, certiorari denied, 1936, 300 U.S. 661, 57 S.Ct. 491, 81 L. Ed. 869; United States v. Brass, D.C.E. D.N.Y.1941, 37 F.Supp. 698. Moreover, the Federal Rules of Civil Procedure have been held to apply to denaturalization actions. United States v. Jerome, D.C.S.D.N.Y.1954, 16 F.R.D. 137.[2]

But while technically we are not administering the criminal law in this case, we are concerned with the administration of a sanction which, in effect, is gravely penal. A denaturalization proceeding has been described as not imposing a penalty upon the defendant in that he never had a constitutional or moral right to his citizenship. However, in truth, a proceeding of this type puts his right to life in the American community as much in jeopardy as does any criminal trial. Cf. Roche, Statutory Denaturalization, 13 U. of Pit.L.Rev. 276, 325 (1952). As Judge Hastie wrote for the Court of Appeals for the 3rd Circuit in United States v. Minker, 3 Cir., 217 F.2d 350, 353, affirmed, 1956, 350 U.S. 179, 76 S.Ct. 281:

> "A fine or imprisonment is the normal criminal penalty. But loss of citizenship is a far graver penalty than most fines and many prison sentences."

The Supreme Court has recognized this by requiring a strictness of proof in denaturalization cases which approximates that imposed in criminal cases. Knauer v. United States, 1946, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 1943,

2. See also Johannessen v. United States, 1912, 225 U.S. 227, 32 S.Ct. 613, 56 L. Ed. 1066, and Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. In Johannessen v. United States, the Government brought a proceeding to cancel a naturalization certificate allegedly obtained by a fraudulent misrepresentation as to the five-year residence period. The defendant argued, inter alia, that the statute giving the Government authority to so proceed was ex post facto. The Court, while hinting that the Government had this authority without statute [see Knauer v. United States, 1946, 328 U.S. 654, 671-672, 66 S.Ct. 1304, 90 L.Ed. 1500], rested its decision on a finding that the statute was not ex post facto. Since an alien has no constitutional right to retain a citizenship acquired by fraudulent imposition, the statute inflicts no new criminal punishment upon him. The Court suggested, however, that the statute would have been ex post facto had it expanded the grounds for denaturalization. In the instant case, of course, the very commission of the fraud is in question.

Harisiades v. Shaughnessy, supra, was a deportation case. In this area, the power of Congress has been termed supreme and the power to deport has been likened to the power to exclude. Id. 350 U.S. at page 586, 72 S.Ct. 512. However, a sharp distinction has been drawn between the deportation and the denaturalization cases and I do not feel that the former are applicable. See United States v. Minker, 1956, 350 U.S. 179, 191, 192-193, 76 S. Ct. 281 (concurring opinions); Schneiderman v. United States, 1943, 320 U.S. 118, 122, 63 S.Ct. 1333, 87 L.Ed. 1796; cf. Baumgartner v. United States, 1944, 322 U.S. 665, 675, 64 S.Ct. 1240 88 L. Ed. 1525.

**782**

320 U.S. 118, 122, 63 S.Ct. 1333, 87 L. Ed. 1796.

It would seem anomalous that in a proceeding of this nature in which so heavy a criterion of proof must be exacted by this court from the Government before decreeing denaturalization, the defendant can be compelled to be a witness against himself. Moreover, a recent decision of the Supreme Court, Ullmann v. United States, 1956, 350 U.S. 422, 426, 76 S.Ct. 497, 500, enjoins us not to interpret the constitutional protection provided for by the Fifth Amendment in a "hostile or niggardly spirit."

All that I have said and believe should impel me to the conclusion that the Government should not be permitted to use the defendant as a witness against himself in this action. But I realize that I am treading on sensitive and uncharted ground. To rule the testimony out of the proceeding may possibly abort the Government's case; to compel the defendant to testify will provide the Appellate Court with a complete record so that it may, if it is so advised, afford the defendant ample protection by appropriate judgment.

Accordingly, I overrule the objection and I direct the defendant to take the stand.