ELMER J. BROD AND MARIE BROD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1471-73.    Filed February 11, 1976.

*Melvin M. Engel,* for the petitioners.
*Daniel A. Taylor, Jr.,* for the respondent.

OPINION

SCOTT, *Judge:* On June 2 and June 4, 1975, pursuant to notice previously given, respondent's "Motion to Compel Responses to Respondent's Interrogatories," filed April 22, 1975, petitioners' "Motion to Strike the Affirmative Pleadings of the Respondent and for Judgment for the Petitioners on the Pleadings," filed May 8, 1975, and petitioners' "Motion to Suppress Evidence and to Quash Respondent's Interrogatories to Petitioner," filed May 8, 1975, came on for hearing.

Following the hearing, the Court by order dated July 3, 1975, denied petitioners' motion to strike the affirmative pleadings of respondent and for judgment on the pleadings and denied petitioners' motion to suppress evidence and to quash respondent's interrogatories to petitioners insofar as those interrogatories deal with information obtained by the internal revenue agent prior to September 6, 1967, and granted respondent's motion to compel responses to respondent's interrogatories to the extent that the information sought by the interrogatories deals with information furnished by petitioners to the internal revenue agent or information reasonably expected

to be obtained by the internal revenue agent from the information furnished by petitioners to the internal revenue agent prior to September 6, 1967. Thereafter petitioners served on respondent answers to respondent's interrogatories stated to be in accordance with the order of the Court which were subscribed and sworn to on July 3, 1975. On July 15, 1975, respondent filed a "Motion to Compel Complete Answers to Respondent's Interrogatories or, in the Alternative, for Sanctions" with respect to certain of the answers made by petitioners. In accordance with the direction of this Court, petitioners filed a response to this motion.

The principal issue left for decision is whether petitioners are justified in refusing to answer questions dealing with information which was obtained by respondent's agents after March 26, 1968, the date when a special agent of the Intelligence Division of the Internal Revenue Service first interviewed petitioners, because the special agent did not inform petitioners of their rights under the fifth amendment of the Constitution.[1]

The record shows that prior to a special agent beginning any investigation of this case, a revenue agent had begun a routine examination of petitioners' tax return for the calendar year 1965 and had later expanded his examination to cover the calendar years 1964 and 1966. After conducting his examination over a period of several months and obtaining substantial information with respect to petitioners' bank accounts, bank deposits, and assets, the revenue agent made a computation of petitioners' tax liability by using bank deposits reduced by certain items such as redeposits and other items the agent considered as nontaxable receipts. The agent proceeded in this manner after he concluded that petitioners' books and records were totally inadequate for properly computing their taxable income for the years 1964 through 1966. After making these computations, the agent concluded there was a reasonable basis to suspect that petitioners' returns were fraudulent and on September 6, 1967, referred the

---

[1] The record shows that respondent's agent obtained no information with respect to petitioners' tax liability between Sept. 6, 1967, when the revenue agent recommended the case for investigation of possible criminal fraud by petitioners until Mar. 26, 1968, when a special agent first visited petitioners. Therefore, our use of the Sept. 6, 1967, date in our order dated July 3, 1975, refers to much the same evidence as if we had referred to evidence obtained after Mar. 26, 1968, although there may have been some information obtained by respondent's agents in the Mar. 26, 1968, interview which had not been previously obtained by the revenue agent.

case, together with a copy of his report, to the Intelligence Division of the Internal Revenue Service.

Nothing further was done with respect to this case, except the acceptance of the case by the Intelligence Division, until March 26, 1968, when a special agent of the Intelligence Division of the Internal Revenue Service and the revenue agent called on petitioners. The special agent identified himself but did not tell petitioners of their right to remain silent, that any statement made by them might be held against them, and their right to be represented by counsel. The special agent, together with the revenue agent, interviewed petitioners on March 26, 1968, and again on March 27, 1968, April 26, 1968, and April 29, 1968, interviewed Mr. Brod (petitioner). The revenue agent was with the special agent at all of these interviews and both petitioners were present at the March 26, 1968, interview. At the conclusion of his fourth meeting with petitioner on April 29, 1968, the special agent concluded the preliminary investigation he had made to determine whether there was a reasonable basis for further proceeding to investigate the criminal aspects of petitioners' tax liability and recommended the case for a full-scale criminal investigation.

On June 13, 1968, the special agent again called on petitioner and at that time advised him that under the fifth amendment he had the right to refuse to answer any questions or submit any information if he felt that such answers or information might tend to incriminate him in any way and further advised petitioner that anything he said or any submitted information might be used against him in any proceedings which might be undertaken by the United States. The special agent also advised petitioner that he was entitled to be represented by counsel if he desired. At that junction petitioner informed the agent that he had been talking to an attorney and would answer no further questions until he consulted with his attorney. Thereafter, petitioner answered no questions of either the revenue agent or special agent nor did he furnish any representative of the Internal Revenue Service with any further information. Petitioner is a man of limited education who has been primarily engaged in farming most of his life.

After the conclusion of the special agent's investigation, an indictment was returned by a grand jury charging petitioner,

Elmer J. Brod, with violation of section 7201, I.R.C. 1954,[2] for the taxable years 1964, 1965, and 1966. Prior to the trial of that case in the United States District Court for the Southern District of Texas (Houston Division) petitioner filed a motion to suppress evidence, and after hearing, the District Court issued an order (see *United States v. Brod,* 324 F. Supp. 800 (S.D. Tex. 1971)) suppressing all evidence obtained from Mr. Brod subsequent to March 26, 1968, and before June 13, 1968, when he was informed of his constitutional rights (therein referred to and sometimes herein referred to as *Miranda* warnings). See *Miranda v. Arizona,* 384 U.S. 436 (1966). The Government filed an appeal from this order to the United States Court of Appeals for the Fifth Circuit but later dismissed the appeal and the criminal case against petitioner was dismissed.

Petitioners on January 28, 1974, filed a motion in this case to suppress evidence, which motion was argued at Dallas, Tex. Thereafter this Court entered an order denying petitioners' motion and in the memorandum sur order pointed out that the proper time to raise the issue of suppression of evidence was when such evidence was offered at the trial of this case.

After the entry of this order respondent, on February 18, 1975, served interrogatories upon petitioner and on April 22 filed the motion to compel responses to respondent's interrogatories which is here under consideration.

Respondent argues that even though evidence obtained after the special agent's conference with petitioner on March 26, 1968, was suppressed in the criminal case, it should not be suppressed in the instant case which involves the civil fraud penalty. If we agree with respondent, it would be appropriate for us to direct petitioner to answer the interrogatories and order that otherwise sanctions will be imposed on petitioner.

Petitioner argues that the issue as to the suppression of evidence because of violation of a taxpayer's rights under the fifth amendment is identical in a criminal fraud case in a United States District Court and in a civil fraud case in this Court. Also, based on the evidence introduced at the hearing on petitioners' motion to suppress evidence in the criminal case and additional evidence presented at the hearing on the motions now under consideration in this Court, petitioners argue that we should

---

[2] All statutory references are to the Internal Revenue Code of 1954, unless otherwise noted.

suppress all evidence obtained by respondent's agents after March 26, 1968, even if the issue in this case differs from that in the prior criminal case. If we were to accept petitioners' position that evidence which is suppressed in a criminal case must also be suppressed in a civil fraud case, then because of the decision for the same years here in issue in *United States v. Brod, supra,* having become final, we would conclude that the evidence obtained by respondent's agents after March 26, 1968, should be suppressed. Although evidence was introduced by each party at the hearing on respondent's and petitioners' motions in this case, it is clear in the record and both parties recognize that we are concerned only with whether petitioner should be required to answer interrogatories based on the same evidence that was suppressed in the District Court case. Under these circumstances if we considered the issue as to suppression of evidence in a civil fraud income tax case to be the same as the issue of suppression of evidence in a criminal case charging a taxpayer with filing a fraudulent income tax return, we would accept the final decision of the District Court since it first reached the issue regardless of our independent view of the merits of the issue. Cf. *Estate of Millard D. Hill,* 59 T.C. 846, 851 (1973). However, in our view the issues are not identical but rather are so dissimilar that a holding as to suppression of evidence in a criminal fraud case is not only not controlling but even not helpful in resolving the issue in a civil fraud case.

In *John Harper,* 54 T.C. 1121 (1970), a Court-reviewed case, we held that the fact that evidence was obtained under circumstances, including the failure to give *Miranda* warnings, which might result in its suppression in a criminal case, did not require the exclusion of such evidence in a civil fraud case. In the *Harper* case, *supra,* we stated at pages 1137-1138:

An alternative reason for treating petitioner's statements at the June 28, 1961, interview as competent evidence in this case is that the absence of *Miranda* warnings does not bar the use of admissions in a civil tax fraud proceeding. The fifth and sixth amendments of the Constitution are generally not applicable in a civil case, although the limitation to criminal cases does not prevent persons from claiming the privilege in noncriminal proceedings when there exists the possibility of subsequent criminal prosecution. See, e.g., *Grunewald* v. *United States,* 353 U.S. 391 (1957) (grand jury); *Quinn* v. *United States,* 349 U.S. 155 (1959) (legislative investigation); *Smith* v. *United States,* 337 U.S. 137 (1949) (administrative investigation); *McCarthy* v. *Arndstein,* 266 U.S. 34 (1924) (civil cases). But when the threat of criminal prosecution is

removed, by the grant of immunity "coextensive with the scope of the privilege against self-incrimination," then testimony may be compelled. See *Murphy* v. *Waterfront Commission,* 378 U.S. 52 (1963).

Where there is no threat of criminal prosecution, a person may not claim the privilege, even if testifying may cause him to lose his job, *Pfitzinger* v. *Civil Service Commission,* 96 F. Supp. 1 (D.N.J. 1951), affirmed per curiam 192 F. 2d 934 (C.A. 3, 1951); or his citizenship, *DaCosta* v. *Holland,* 151 F. Supp. 746 (E.D. Pa. 1957) (deportation); *United States* v. *Costello,* 144 F. Supp. 779 (S.D. N.Y. 1956) (denaturalization); or his reputation, cf. *United States* v. *Orman,* 207 F. 2d 148 (C.A. 3, 1953); *United States* v. *Thomas,* 49 F. Supp. 547 (W.D. Ky. 1943); *Brown* v. *Walker,* 161 U.S. 591 (1896). These cases must be distinguished from those suggesting that it may be unconstitutional to impose like penalties for properly invoking the privilege. Compare *Garrity* v. *New Jersey,* 385 U.S. 493 (1967); *Slochower* v. *Board of Education,* 350 U.S. 551 (1956). In these latter cases there existed the threat of criminal prosecution.

In this case the threat of criminal prosecution has been removed. Even if it had not been, the cases declining to compel testimony because of the possibility of prosecution are not applicable. Here the statements have already been made, and a decision to admit them does not compel testimony, nor does it require their admission or exclusion in a criminal case.

\* \* \*

A civil tax fraud case is not "a criminal case" or the adjunct of one. The civil aspects of Federal tax controversies should not be confused with separate criminal penalties. *Spies* v. *United States,* 317 U.S. 492 (1942); *Acker* v. *Commissioner,* 258 F. 2d 568 (C.A. 6, 1956), affirming 26 T.C. 107 (1956).
\* \* \*

In *Hugo Romanelli,* 54 T.C. 1448 (1970), following our decision in the *Harper* case, *supra,* we held that admissions obtained without giving of *Miranda* warnings, were admissible in a civil fraud case, stating at page 1463:

Petitioner has cited no case, and we have found none, requiring admissions obtained without informing petitioner of his constitutional rights to be excluded from a civil proceeding. To be sure, the fifth amendment timely asserted may excuse a witness from testifying in a civil proceeding. *McCarthy* v. *Arndstein,* 266 U.S. 34 (1924); *In Re Gault,* 387 U.S. 1 (1967). But such assertion, as we stated in *Harper,* hinges upon the possible use of the evidence in a criminal proceeding. *McCarthy* v. *Arndstein, supra;* and *In Re Gault, supra.* Where no threat of criminal prosecution exists because of a grant of immunity or other reason, the fifth amendment is inapplicable and testimony may be compelled. *Brown* v. *Walker,* 161 U.S. 591 (1896); *Brown* v. *United States,* 359 U.S. 41 (1959); *Mason* v. *United States,* 244 U.S. 362 (1917). \* \* \*

The above-stated rationale for the inclusion of the oral admissions of petitioner is, of course, predicated upon the now well-established principle that the additions to tax under section 6653(a) or (b) do not fall within the rubric of criminal or quasi-criminal proceedings. *Helvering* v. *Mitchell,* 303 U.S. 391 (1938); *John Harper, supra* at 1138. \* \* \*

Our holding in the *Romanelli* case, *supra,* was reversed by the Court of Appeals for the Seventh Circuit, *Romanelli* v. *Commissioner,* 466 F. 2d 872 (1972). The Circuit Court after stating that the issue of use in a civil fraud case of admissions obtained without giving *Miranda* warnings required a determination as a matter of policy of whether exclusion of the evidence in the criminal case was sufficient deterrent to proscribed police conduct, concluded that "In such balancing process, we prefer the policy judgment that exclusion from establishing the government's civil case is an appropriate and desirable deterrent."

In *Efrain T. Suarez,* 58 T.C. 792 (1972), we held evidence obtained in violation of the fourth amendment to be tainted and therefore not a proper basis for use in a civil tax case, but we have not departed from the position we took in *Hugo Romanelli, supra,* in connection with use in a civil case of evidence obtained which in a criminal case would be considered to have been obtained in violation of the fifth amendment. Our attention has not been directed to any case other than *Romanelli* in which it has been held that in a civil case evidence so obtained should be suppressed.

The provisions of the fourth amendment concern the rights of persons to be secure in their persons, houses, papers, and effects and prohibits unreasonable searches and seizures. There is nothing in this amendment with respect to limiting the use of evidence obtained in violation thereof. The courts, however, as fully discussed in the *Suarez* case, *supra,* have considered such evidence tainted and, uniformly, in criminal cases and often in civil cases evidence obtained in violation of the fourth amendment has been not only suppressed but also required to be returned to the person from whom it was illegally seized.

The provisions of the fifth amendment do not, as do those of the fourth amendment, deal with the illegal obtaining of evidence by the State but rather prohibit any person from being "compelled in any criminal case to be a witness against himself." This provision was early held not only to encompass testimony in a criminal trial but also to prohibit compelling testimony in a civil trial or a statement out of court which might tend to incriminate a person. Therefore, the amendment was held to prohibit use by the State in a criminal trial of any evidence extracted from the defendant by force or coercion. See discussion

in *United States v. Prudden,* 424 F. 2d 1021 (5th Cir. 1970). However, since this amendment concerns a protection against self-incrimination, the restrictions are in our view so different from those of the fourth amendment that the *Suarez* case, *supra,* and the principles discussed therein are not applicable in this case.

In our view, since, as we pointed out in *John Harper, supra* at 1138, a civil fraud tax case is not "a criminal case" nor "the adjunct of one," a taxpayer may be required in such a case to testify to the facts which show his liability for the tax and establish that his underpayment was due to fraud. He has no protection by the fifth amendment from giving testimony which will show that he has a civil fraud liability. For a taxpayer to be justified in refusing to testify to facts concerning his fraudulent omission of income from his return in a case involving only civil fraud, it must be shown that such facts might tend to subject him to criminal charges. Where, as in this case, there remains no possibility of criminal prosecution, petitioner is properly required to testify to all facts concerning his income and expenses including those he furnished to the revenue agent and special agent when he was interviewed by them without being informed of his constitutional right to remain silent and to have the assistance of counsel. For the reasons stated in the *John Harper* case, *supra,* and our opinion in *Hugo Romanelli, supra,* we conclude that the evidence obtained by respondent's agents after March 26, 1968, should not be suppressed in this civil fraud case. With due respect to the Court of Appeals for the Seventh Circuit, our view is that the issue is not one of whether "the balance" is in favor of admitting such evidence in a civil fraud case but rather is whether evidence which a taxpayer can be required to give in a civil fraud case even though contrary to his interests and tending to show that he is liable for the civil fraud addition to tax should be suppressed merely because the circumstances under which respondent's agents obtained such evidence required its suppression in a criminal fraud case. If no criminal case had been initiated against petitioner, unquestionably he would be required to give the testimony here sought unless there was a possibility of his being charged criminally and the evidence used against him. See *Harry Gordon,* 63 T.C. 51, 64 n. 4 (1974). Because petitioner was entitled not to be subjected to possible conviction for criminal tax fraud by evidence he was held to have in effect been

coerced into giving, does not indicate to us that such evidence should not be used in an effort to establish a civil fraud liability merely because of the evidence being the same. See the discussion in *Donaldson v. United States,* 400 U.S. 517 (1971), affg. the decision by the Fifth Circuit, 418 F. 2d 1213 (1969), with respect to enforcement of summons. Of course the circumstances under which the information was furnished must be considered by the trier of the facts in determining the reliability of the evidence and the weight to be accorded it. It is conceivable that evidence might be obtained by coercion of such a degree as to cause it to be totally unreliable and therefore not to warrant admission. This, however, is not the situation here and petitioner makes no argument that the evidence he seeks to suppress is untrue or unreliable because of any coercion.

If there were still a possibility of criminal prosecution against petitioner, he might be justified in refusing to answer questions in this case under the protection of the fifth amendment because of that fact, but not because of suppression of evidence in a criminal case. See, however, our discussion in the *Harper* case, *supra,* concerning admission in a civil case of statements already made even though the threat of criminal prosecution had not been removed. However, in the instant case the criminal prosecution against petitioner has been dismissed and the only question now is whether under the facts here present the evidence obtained from petitioner between March 27, 1968, and June 13, 1968, may properly be used in this civil case. Since we conclude that this evidence is proper in this civil case, petitioner will be directed to answer all of respondent's interrogatories.

After petitioner filed his answers to respondent's interrogatories in accordance with the order of this Court entered July 3, 1975, respondent on July 22, 1975, filed a motion to compel petitioner to give more complete answers to some of the interrogatories or in the alternative for entry of an order that certain affirmative allegations in respondent's answer be taken as established. Each of the interrogatories which respondent moved be more completely answered deals with detailed items shown on petitioner's bank statements. Petitioner's answer to each was in effect that he does not now have the records available. Petitioner's counsel, in reply to respondent's motion, stated that at one time during the examination of his returns petitioner furnished the bank records which he does not now have to

respondent and has no record of those records having been returned, and that the records are available to respondent at the various banks if respondent does not now have petitioner's records or copies thereof. Under the circumstances, respondent's motion filed July 22, 1975, will be denied and the parties are directed to comply with Rule 91(a) of the Rules of Practice and Procedure of this Court requiring stipulation of all facts which should be fairly in agreement with respect to the information shown on these bank records.

*An appropriate order will be issued.*

Reviewed by the Court.

WILBUR, *J.,* concurring: I concur in the result reached by the majority only because of the facts here present. The special agent interviewed petitioner on March 26, 1968, March 27, 1968, April 26, 1968, and on April 29, 1968, before giving him the warning required by respondent's procedures published in I.R.S. News Release No. 897 (Oct. 3, 1967). These procedures, designed to safeguard a taxpayer's fifth amendment rights, require a special agent on initially contacting a taxpayer to identify his function of investigating the possibility of criminal tax fraud. If "preliminary inquiries" do not resolve the potential criminal aspects, the special agent must advise the taxpayer of his rights to remain silent and to retain counsel.

The court in *United States v. Brod,* 324 F. Supp. 800 (S.D. Tex. 1971), concluded that the warning specified in respondent's procedures should have been given at the *end* of the March 26, 1968, interview, and that evidence acquired in the three *subsequent* interviews in disregard of respondent's published procedures violated petitioner's right to due process of law under the fifth amendment and should be suppressed. See *United States v. Leahey,* 434 F. 2d 7 (1st Cir. 1970); *United States v. Heffner,* 420 F. 2d 809 (4th Cir. 1970).

The three subsequent interviews, conducted on March 27, 1968, April 26, 1968, and April 29, 1968 (unlike the 3-hour interview on March 26 delving deeply into petitioner's business affairs) were of relatively short duration. Those interviews were directed at specific points that are not related to the relatively routine interrogatories respondent asked in this case, which

appear to simply parallel those respondent would routinely ask in most civil fraud cases. The disputed questions, to the extent they are derived from any evidence gathered by the agents, relate to materials gathered at or prior to the March 26, 1968, interview, that is, prior to the time that *United States v. Brod, supra,* found that the warning was required under respondent's procedures. These findings in *Brod* are binding upon us in these proceedings. *Estate of Millard D. Hill,* 59 T.C. 846, 851 (1973). For these reasons, I concur in the result.

However, the majority opinion appears to hold that evidence (or the fruits of such evidence) acquired in clear violation of a taxpayer's fifth amendment rights can be admitted in a civil fraud case, as long as it is reliable, even though the evidence is not independently obtainable by respondent. To the extent the majority opinion so holds, I am in disagreement with both the reasoning and conclusion.

Evidence actually acquired in violation of constitutional rights, whether those guaranteed by the fourth amendment or the fifth amendment, is subject to the exclusionary rule if the benefits of the incremental deterrence to unconstitutional police behavior outweigh the disadvantages attending exclusion. *Michigan v. Tucker,* 417 U.S. 433, 446, 447 (1974); *United States v. Calandra,* 414 U.S. 338, 349, 351 (1974).[1] The Commissioner of Internal Revenue recently testified before Congress that the Service has "a gold mine of information in our tax system. We have more information about more people than any other agency in this country."[2] They also have very broad investigative powers. Special agents, being among the best educated and most highly trained investigative officers in the world, are fully capable of utilizing these tremendous resources.

---

[1] Certainly the fact that the procedures here employed might have been constitutional "if no criminal case had been initiated against petitioner" begs the question; a criminal investigation did occur, petitioner's fifth amendment rights were violated, and the "same evidence," if not independently obtained by respondent, should be excluded. To the extent the majority opinion is predicated on the supposition of nonexistent facts (i.e., no criminal investigation, no fifth amendment violation) it is clearly in error. In this connection, it is not clear what ruling, if any, the Court is making with regard to petitioner's motion to suppress evidence obtained at the Mar. 27, 1968, Apr. 26, 1968, and Apr. 29, 1968, interviews with petitioner. The evidence covered by this motion includes an inventory of petitioner's safety deposit box taken by petitioner and the special agent on Mar. 28, 1968, and is clearly covered by the District Court's suppression order. For the reasons outlined above, I would order this evidence suppressed.

[2] Staff of the Joint Comm. on Internal Revenue Taxation, 94th Cong., 1st Sess., Confidentiality of Tax Returns 3 (Comm. Print 1975).

Additionally, these officers do not perform their duties in anything approaching a tense atmosphere engendering fear for their safety, or requiring split second decisions under circumstances where anyone's physical safety is threatened. In short, if ever there existed a situation where investigative officers should be held to the highest standards, it is the instance before the Court.

Therefore, I would exclude evidence acquired in violation of a taxpayer's fifth amendment rights in any civil fraud proceeding unless the Government can show an independent source for the evidence clearly demonstrating that they are not seeking to benefit from unconstitutional police behavior. The Government, having lost the fruits of their unconstitutional behavior in the criminal proceeding, should not have its disappointment diminished by winning a consolation prize in the form of a 50-percent civil fraud penalty in this Court. Certainly the deterrent to police behavior underlying the policy of exclusion in the criminal trial should not be substantially reduced by providing a high yield on the unconstitutionally acquired evidence in the civil trial. Cf. *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30 (1958).

TANNENWALD, FEATHERSTON, and STERRETT, *JJ.*, agree with this concurring opinion.