J. DWIGHT SNYDER AND HALLIE M. SNYDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ROBERT SWARTZENTRUBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snyder v. Comm'r
Docket Nos. 2917-76, 3143-76.
United States Tax Court
T.C. Memo 1978-478; 1978 Tax Ct. Memo LEXIS 35; 37 T.C.M. (CCH) 1849-36; November 29, 1978, Filed *35 In docket No. 2917-76, respondent used the bank deposits method of recomputing income due to inadequate records. Held, respondent's use of this method was reasonable under the circumstances. Held, further, amount of taxable income determined. In docket No. 3143-76, held, further, amount of business expenses incurred determined; held, further, no casualty loss allowed. Held, further, taxpayer did not file an income tax return for 1971. Held, further, taxpayer is liable for self-employment tax. J. Dwight Snyder, pro se, in docket No. 2917-76. Robert Swartzentruber, pro se, in docket No. 3143-76. Steven J. Mopsick, for respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in income taxes and penalties thereon as follows: [1] Docket
Addition to Tax No.
Petitioners
Year
Amount
Sec. 6651 (a)
Sec. 6653 (a) [2]
2917-76
J. Dwight and
1972
$9,432.72
$471.64
Hallie M. Snyder
3143-76
Robert Swartzen-
truber
1971
300.76
75.19
15.04
1972
325.13
81.04
16.26 Due to concessions, the issues *36 remaining to be decided are: (1) Whether respondent's determination of the Snyders' income by use of the bank deposits and expenditures method should be sustained; (2) Whether Swartzentruber is entitled to certain business deductions and a casualty loss; (3) Whether petitioners in both cases are subject to self-employment tax; [3] (4) Whether Swartzentruber filed an income tax return for the taxable years 1971 or 1972; (5) Whether petitioners in both cases are subject to negligence penalties under section 6653(a); (6) Whether Swartzentruber is subject to the late filing penalty under section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Robert Swartzentruber filed no Federal income tax return for the taxable year 1971. In 1972, Swartzentruber filed individually and J. Dwight and Hallie M. Snyder (hereafter the Snyders) filed jointly page 1 of Form 1040, U.S. Individual Income Tax Return, signing under the date of April 15, 1973, and containing no information except names and addresses. In the spaces provided for social security numbers, *37 all petitioners inserted "Don't know." J. Dwight Snyder (hereafter Snyder) stated that his occupation was "businessman" and that his filing status was "married filing joint return." Swartzentruber inserted "labor" as his occupation and "single" as his filing status.There was deleted from the line above all petitioners' signatures the words "under penalties of perjury." In addition to their signatures at the bottom, the only other information provided on "returns" in both cases was a typed reference to certain attached materials entitled "Petition and Protest," consisting of 104 pages of materials which were attached to the blank 1040's. These attached materials consisted in part of petitioners' arguments against the validity of the monetary system of the United States and other constitutional arguments. [4] *38 Robert Swartzentruber resided in Oakland, Maryland at the time he filed his petition herein. J. Dwight and Hallie M. Snyder were also residents of Oakland, Maryland at the time they filed their petition herein. During the taxable year 1972, Snyder was sole proprietor of a cabinet shop. He also rented 5 houses and freezer lockers he owned. Snyder never voluntarily produced any books and records for inspection by the revenue agent. Respondent, therefore, used the bank deposits and expenditures method to determine Snyder's income. [5] *39 Respondent voluntarily provided Snyder, in a letter dated November 10, 1976, with his method of determining Snyder's net income. Where the revenue agent could not decide whether to treat an item paid for by Snyder as a personal item or as a business outlay it was treated as a business outlay, thus giving Snyder credit for it as a reduction in his adjusted gross income. Throughout the entire audit procedure, Snyder never addressed himself to respondent's findings nor introduced evidence to contest the determination. The revenue agent determined from bank deposits that Snyder had gross receipts in 1972 of $86,041.48, computed as follows: Garrett National Bank Account No. XXX-X7199
$ 71,888.00
Garrett National Bank Account No. XXX-X5110
2,940.75
Terra Alta Bank Account No. XX-X048-8
15,422.26
Terra Alta Bank Account No. XX-X528-7
790.47
Terra Alta Bank - Savings Account
10,000.00
Total
$ 101,041.48
Less: Nontaxable deposits
(15,000.00)
Gross receipts
$ 86,041.48
*40 At trial Snyder admitted that respondent's determination of his gross receipts was understated by $220.75. The revenue agent's initial investigation showed that Snyder's total allowable expenses, substantiated by check, were $61,365.81, calculated as follows: Garrett National Bank Account No. XXX-X7199
$ 53,525.98
Garrett National Bank Account No. XXX-X5110
2,964.15
Terra Alta Bank Account No. XX-X048-8
4,848.61
Terra Alta Bank Account No. XX-X528-7
27.07
Total
$ 61,365.81 From these calculations, respondent determined that Snyder had a net profit of $24,675.67 ($86,041.48 less $61,365.81).However, the revenue agent noticed that there were few personal necessities accounted for by check. He, therefore, referred to United States Department of Labor statistics showing average family living costs and determined a proper adjustment for cost of living to be $11,057. This amount was added to the $24,675.67 previously determined to arrive at an adjusted gross income of $35,732.67. At trial, it was developed that the revenue agent may not have considered Snyder's checks which were written late in calendar year 1972 but which had not cleared his bank until 1973, nor checks written in late 1971 which *41 had not cleared his banks until early 1972. By order of the Court, Snyder produced certain checks which resulted in a net reduction of $3,291.69 in his adjusted gross income as determined by the revenue agent. During the taxable years 1971 and 1972, Swartzentruber was in the business of hauling. Swartzentruber owned a truck which he purchased in "dilapidated" condition in 1970 and which he used exclusively for his business. He also owned a Chevrolet automobile which he maintained for personal use. The truck was severely damaged in an accident in September 1972, but apparently was not replaced by a new truck during 1972. Swartzentruber orally stipulated at trial that he received unreported taxable income in the amounts determined by respondent in the notice of deficiency. [6] *42 Swartzentruber never produced any books or records for the revenue agent's inspection during the audit proceedings. OPINION Respondent determined the Snyders' taxable income using the bank deposits and expenditures method. Respondent first totaled deposits from known checking and savings accounts and then reduced the deposits by determinable nontaxable deposits such as interaccount transfers. He then reduced this amount by allowable business expenses substantiated by petitioners' checks. To this amount, respondent added cash expenditures for cost of living expenses as determined from Department of Labor statistics. This method is an accepted means of recomputing income where deposits are made, the sources of which were either not shown by the taxpayer's books and records or where the taxpayer does not make his books and records available for audit. Cupp v. Commissioner, 65 T.C. 68, 72 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). Although we agree with Snyder that the existence of bank deposits does not of itself *43 show the sums deposited were income, where respondent has determined they were, the burden of proof is on the taxpayer to show the determination was wrong, Jones v. Commissioner, 29 T.C. 601, 613-614 (1957), unless respondent was arbitrary in his determination or not entitled to use the bank deposits method. Snyder generally contends that respondent was arbitrary in his determination and harassed him during the audit. Apparently, it is his contention the burden of proof thereby rests with respondent. Far from this being the case, however, Snyder proved to be intransigent, uncooperative, and obstreperous throughout the entire proceedings. During the course of the audit of Snyder's 1972 "return," Internal Revenue Service personnel provided him with every opportunity to show a proper computation of his taxable income and respondent voluntarily provided him with copies of the revenue agent's work papers. Nevertheless, Snyder never came forward with any information which would contradict the findings made by the revenue agent nor were any books or records ever voluntarily produced for inspection. Clearly, a taxpayer cannot refuse to cooperate with the agent conducting a tax investigation *44 and then claim that the resulting determination by the respondent was arbitrary when the agent acted reasonably, taking into consideration the information available to him. Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Accordingly, we believe the burden of proof remains on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure.
Snyder further objects to the determination because he contends it is based only on hearsay and is at best only an approximation of his taxable income. Respondent's determination, however, was based upon an analysis of Snyder's bank deposits. See also Weimerskirch v. Commissioner, 67 T.C. 672 (1977), on appeal (9th Cir., March 29, 1977); Rosano v. Commissioner, 46 T.C. 681 (1966). Moreover, the bank deposits method does not require mathematical certainty and the taxpayer may not complain that respondent resorted to approximation where he failed to keep adequate records. Harbin v. Commissioner, 40 T.C. 373 (1963). Finally, Snyder contends that respondent's use of the Bureau of Labor Statistics to compute his living expenses was unfair and arbitrary when applied to him.However, it has been held that these *45 statistics generally provide a reasonable basis for such a determination, Burgo v. Commissioner, 69 T.C. 729, 749 (1978), and Snyder has not shown otherwise, notwithstanding his portrait of his family as simple country folk who grew their own food and made their own clothing. Snyder has attempted to rebut respondent's determination largely through his own testimony and two documents of doubtful value produced at trial which he claimed related to his calcuation of taxable income. [7] *46 Snyder failed to introduce into evidence underlying checks, receipts, and other documents (which he claimed to have and which he stated at trial he would introduce) in support of his vague and unconvincing testimony. [8] *47 This falls far short of the evidence required to rebut respondent's determination. Swartzentruber orally stipulated that he received unreported taxable income in the amount determined by respondent. [9] However, he contends that respondent failed to *48 give him credit for certain business expenses, including depreciation, relating to his truck which he used in his hauling business. He also apparently contends that he is entitled to a casualty loss deduction on the "total loss" of the truck due to an accident. Swartzentruber correctly notes that respondent has allowed him no deductions *49 for business operations relating to his truck. Nonetheless, the burden of proof is upon him to show deductions to which he is entitled and the amount of expenses incurred. Initially, we note that Swartzentruber provided no evidence until trial, proved to be as uncooperative as Snyder during audit proceedings and thereby burdened this Court (and respondent) with matters which could have been considered by respondent and which might have been settled prior to trial. Moreover, such evidence was not introduced in such a manner as would easily enable this Court to determine which verified expenses related to personal items. [10] *50 We do not believe on the evidence before us that Swartzentruber is entitled to any depreciation on his truck or a casualty loss due to the accident. The truck was purchased in dilapidated condition, and although Swartzentruber testified that he had "roughly $2,800 in it" he introduced no evidence that he spent any amount on refurbishing the truck. We find further support for this holding in view of Swartzentruber's ability to provide substantiation for certain minor repairs (deductible under section 162); if he saved receipts for minor repairs and often paid for them by check, we find it incredible that he would not have receipts (or cancelled checks) for $2,800 of major restoration expenses. Swartzentruber did provide substantiation of certain expenditures relating to automotive supplies, etc. [11] Our problem here is in determining which of these expenses related *51 to Swartzentruber's truck (used exclusively in his business) and which related to his car (nonbusiness use). Based upon this evidence and Swartzentruber's testimony, we find that he is entitled to deduct as business expenses the following expenditures: 1971
Check to Davis for jack for his truck
$ 25.39
Expenses paid to Craig Motors
137.52
Check to Kights Insurance for liability
insurance on the truck
187.75
Check to D.M.V. for tags for truck
130.00
Somerset Welding
17.60
Cecil Jackson Equipment
3.94
Shaffer Ford
9.99
60 percent of payments to Ringer Inde-
pendent Oil Co. ($ 609.64) [12] *52 for gaso-
line
365.78
Total
$ 877.97
1972
Check to D.M.V. for tags
$ 130.00
Check to Kights Insurance
164.24
Shaffer Ford
57.69
Craig Motors
8.61
60 percent of payments to Ringer Inde-
pendent Oil Co. made prior to Sept. 6
($ 378.75)
227.25
Total
$ 587.79 Swartzentruber also contends that he is exempt from self-employment tax under section 1402(h) [13] and previously filed an application for exemption. However, no evidence or testimony was adduced in the record in support of his claim nor was there any evidence to show that the alleged application was ever approved by an internal revenue officer. For these reasons, we find that Swartzentruber is liable for self-employment tax.It does not appear that Snyder still contests the self-employment *53 tax, but we uphold respondent's determination for the same reasons on which we sustained the tax on Swartzentruber. Swartzentruber apparently abandoned any argument concerning the section 6653(a) negligence penalties or the section 6651(a) penalty for failure to file a return for 1972.Similarly, Snyder raised no objection at trial or on brief to imposition of the section 6653(a) penalty. Accordingly, both Swartzentruber and Snyder are liable for all penalties. [14]
Decisions will be entered under Rule 155.
Footnotes
1. These cases were consolidated pursuant to respondent's motion.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable years in issue.↩
3. The deficiencies in docket No. 2917-76 and in both years in docket No. 3143-76 include self-employment tax.↩
4. The petition filed in this case by the Snyders contained no reference to constitutional arguments or arguments concerning the validity of the monetary system of the United States, but rather addressed itself only to allegations of error in respondent's determination of disallowed business deductions, personal exemptions, and depreciation. The petition filed in this case by Robert Swartzentruber also contained no reference to constitutional arguments or arguments concerning the validity of the monetary system of the United States and concerned itself only with allegations of error in respondent's disallowance of business deductions and depreciation. At trial and on brief, both the Snyders and Swartzentruber confined the presentation of their cases to respondent's determination of taxable income except for a Fifth Amendment↩ argument made by Swartzentruber noted in the Opinion at Footnote 10.
5. Respondent determined Snyder's net income by first determining his total deposits from known checking and savings accounts reduced by determinable nontaxable deposits such as interaccount transfers and then reducing this amount by allowable business expenses as shown by his business checks. To this amount respondent added cash expenditures for cost of living as determined from Department of Labor statistics.
6. The total amount of unreported taxable income determined by respondent results from payments received by Swartzentruber from Snyder for services rendered in the amount of $2,503.45 in 1971 and $2,828.35 in 1972. These figures represent Swartzentruber's only taxable income for these years and respondent allowed no deductions other than the personal exemption and standard deduction in computing Swartzentruber's income. We note that Swartzentruber admitted that he also worked for others on "rare occasions." Thus, to that extent, his income as determined by respondent is understated.
7. Apart from Snyder's direct testimony and the two exhibits, the only other evidence offered was the testimony of Homer Mellott (who made only one purchase from Snyder in 1972) that Snyder gave him a forty percent discount from the price sheet of the company from whom Snyder purchased (presumably, this price sheet was the manufacturer's suggested price).Mellott and Snyder both then testified that Snyder purchased items from the company at a 42 percent discount from the list price thereby making only two percent on items sold. Initially, we note that the amount paid by Mellott is not in issue for Snyder's income was based upon deposits. Thus, Snyder is apparently contesting the amount of business expenses allowed by respondent. Mellott's testimony of what Snyder paid for goods has little weight and no evidence was introduced (receipts from the company, etc.) to support it. 8. The most detailed exposition of Snyder's calculation of his taxable income found in the transcript is where he states that he had income of [eighty]-six thousand two hundred and sixty-two twenty-three. Expenses of sixty-seven thousand nine hundred and fifty fifteen and inventory brought over from the past year of eight thousand eight hundred eighty-five seventy-one which left me nine thousand four hundred and twenty-six thirty seven and the depreciation on property and equipment was $5624.52, left me a balance of forty-eight one eighty-five. An analysis of this simplified approach to the calculation of net income would appear to be as follows: Snyder takes a gross income figure of $86,262.23 ($220.75 more than respondent determined) and subtracts from it expenses (unsubstantiated) of $67,950.15, leaving $18,312.08. From this he subtracts $8,885.71 for "inventory" leaving a balance of $9,426.37. Finally, he subtracts "depreciation" of $5,624.52 leaving his balance of $4,801.85. At the outset, it must be pointed out that Snyder's own calculations are erroneous and the subtraction, in fact, results in $3,801.85. Moreover, there is nowhere stated his ending inventory, necessary in any computation of cost of goods sold (which he is apparently trying to ascertain). The $5,624.52 depreciation claimed was calculated from one of the two exhibits Snyder introduced into evidence. We already noted that the exhibits were of doubtful value and Snyder's confused testimony as to how the depreciation schedule was arrived at (which indicated, apparently, that many items on the list should not have been depreciated in 1972 because they were junked earlier) rendered the exhibit totally useless and insufficient to support his claim for depreciation.
9. Swartzentruber denies that he never filed an income tax return for 1971 and asserts that he has a return receipt from the Internal Revenue Service to support his claim. Respondent introduced into the record a certification of lack of record filed February 3, 1977, signed by the District Director stating that he had legal custody of Federal tax forms filed in the office with which Swartzentruber claimed he filed, and that no income tax form for 1971 allegedly filed by Swartzentruber could be found. Swartzentruber introduced a receipt which indicated that some piece of mail was received by the Internal Revenue Service, although it does not indicate a return was filed. Based upon this evidence, in our findings of fact, we found that no return was filed. For this reason we must sustain the section 6651(a) penalty for failing to file a return for 1971.↩
10. Swartzentruber apparently relies on the Fifth Amendment to support his refusal to come forward with certain evidence which could rebut respondent's determination but which he says might also incriminate him. It is well established that a taxpayer may not withheld information from an agent conducting a tax investigation on these grounds and then use the refusal to place the burden of proof on respondent. Durovic v. Commissioner, 54 T.C. 1364 (1970), affd. in part and revd. in part on other grounds 487 F.2d 36 (7th Cir. 1973), cert. denied 417 U.S. 919 (1974). Moreover, it has long been held that the self-incrimination clause of the Fifth Amendment is not available to a petitioner in a civil case in this Court. Brod v. Commissioner, 65 T.C. 948 (1976); Romanelli v. Commissioner, 54 T.C. 1448 (1970), revd. 466 F.2d 872 (7th Cir. 1972); Harper v. Commissioner, 54 T.C. 1121↩ (1970).
11. ↩
1971 Amount
Checks to: J. M. Davis $ 25.39
D.M.V. for license
130.00
Craig Motors
112.58
Kights Insurance, Inc.
187.75
Invoices: Somerset Welding
17.60
Cecil Jackson Equipment
3.94
Hemminger Auto & Truck Parts
30.00
Shaffer Ford
9.99
Oakland Auto Parts (total of 2)
4.99
Hawkinson Tread Service, Div.
78.96
Craig Motor (total of 2)
24.94
Ringer Independent Oil Co. (total of 8)
609.64
Total claimed
$ 1,235.78
1972
Checks to: D.M.V. for license
$ 130.00
Kights Insurance, Inc.
164.24
Invoices: Shaffer Ford (total of 7)
57.69
Craig Motor (total of 3)
8.61
Oakland Auto Parts
3.59
Ringer Independent Oil Co.
(purchases prior to Sept. 6)
378.75
(purchases after and including Sept. 6)
161.50
Total claimed
$ 904.38
12. We do not believe the entire amount of gas purchased (in units of 250 gallons which were apparently stored on his farm) was used in Swartzentruber's business; we think that some of the gas was used for personal purposes and for this reason believe a reasonable estimate of the gas used in his business was 60 percent of that purchased. Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930). We ar fortified in this finding by the fact that Swartzentruber purchased 250 gallons on Sept. 6, 1972, and 250 gallons on November 16, 1972, yet his truck was destroyed on Sept. 15, 1972, and apparently not replaced during the year. For this reason, we have disallowed any payments for gasoline made on or after Sept. 6, 1972.
13. Redesignated as section 1402(g) for taxable years beginning after Dec. 31, 1976. P.L. 94-455, section 1901(a)(155)(B).↩
14. See Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207↩ (3d Cir. 1977), upholding these penalties in similar circumstances.