GEORGE LOCKE and SUZANNE THOMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket No. 4994-78.
United States Tax Court
T.C. Memo 1979-153; 1979 Tax Ct. Memo LEXIS 374; 38 T.C.M. (CCH) 669; T.C.M. (RIA) 79153; April 17, 1979, Filed George Locke Thompson, pro se. Mark W. Nickerson, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant *375 to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax, for the years 1974 and 1975, in the respective amounts of $286 and $686. At issue are (1) the substantiation of certain unreimbursed entertainment expenses and club dues, totaling $604 in 1974 and $640 in 1975 (the 1975 figure also includes $240 in disallowed travel expense), and (2) the substantiation of office-at-home expenses in excess of $360 and $299 allowed by respondent for 1974 and 1975 respectively. The deductibility of all such expenses is claimed under section *376 162 of the Code. Additional adjustments made by respondent with respect to charitable contributions, interest expense and medical expense were conceded on behalf of petitioners at the trial. On petitioners' oral motion, made at the trial, this case was removed from the small tax case category (so that petitioners could preserve their right to appeal) and was tried as a regular case. An additional motion, for a jury trial, was denied by the Court, relying on Swanson v. Commissioner,65 T.C. 1180 (1976). Petitioners timely filed their original returns with the Internal Revenue Service Center, Chamblee, Georgia, and at the time of filing the petition herein, they resided in Stone Mountain, Georgia. Petitioner George Locke Thompson later filed separate amended returns on Form 1040X in which he eliminated the figures from the "correct amount" column, and substituted the words "object: Self-Incrimination." He noted on such returns that his objections were taken under the 4th and 5th Amendments, and that he would supply information if granted immunity. Respondent's adjustments were based upon the original returns. George Locke Thompson (hereinbelow "petitioner") *377 renewed his constitutional objection at the trial, based on self-incrimination under the 5th Amendment, [3] and declined to testify as to the entertainment expense, club dues, and travel deduction issues for either of the years 1974 or 1975 unless the Court granted him immunity from criminal prosecution (which as the Court explained to petitioner, it had no authority to do). His refusal based upon the 5th Amendment was supported by his assertion that the Internal Revenue Service had branded him a "protestor" and that, as such, he was a candidate for possible criminal prosecution. It appears from the record herein that a "potential fraud" investigation was commenced in 1977 for alleged failure of petitioner to file returns for the years 1971 through 1975. There was a confusion as to petitioner's name, and on November 2, 1977 it was determined by the Intelligence Division that petitioner had filed his returns and the investigation was therefore discontinued. Under the Freedom of Information Act petitioner, in July 1978, and before the trial of this case, received *378 a copy of the file disclosing such discontinuance. The file contained a page headed "Intelligence Information Item, Form 3949, Suspected Tax Protestors." At the trial, respondent's witness, James R. Kelly, a group manager of the Intelligence Division, affirmed that no criminal investigation was pending involving petitioner, and specifically that none was pending with respect to 1974 and 1975. On cross-examination, Mr. Kelly stated that a 5th Amendment claim on a tax return could potentially generate an investigative procedure. He also testified on cross examination that any erroneous statement made on a return under penalty of perjury could potentially generate a criminal investigation. As stated by the Supreme Court in Zicarelli v. New Jersey Investigation Commission,406 U.S. 472, 478 (1972); It is well established that the [5th Amendment] privilege protects against real dangers, not remote and speculative possibilities. and in Hoffman v. United States,341 U.S. 479, 486 (1951); *379 The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States,340 U.S. 159 (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States,244 U.S. 362, 365 (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States,340 U.S. 367 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." see also Ryan v. Commissioner,67 T.C. 212, 217 (1976); and Brod v. Commissioner,65 T.C. 948, 955 (1976). [4]
*380 The Court was unconviced at the trial and is still unconvinced that petitioner's refusal to testify was premised upon anything more than a subjective feeling, i.e., petitioner's own "say-so" that the "protestor" label somehow constituted a direct threat of criminal prosecution. Petitioner was in the legitimate business of selling medical supplies. He established not even a suggestion of a link between his entertainment, club dues or travel deductions and possible criminality--he merely had a fear that should he be caught up in an erroneous statement made under oath he would be a more likely target for criminal prosecution than if he had not been labelled a "protestor". This is not a reasonable basis for apprehension of the hazards of incrimination. Petitioner was assured with clarity that no such investigation was pending at the time of trial. It appeared to the Court that a residual anxiety over potential investigation for perjury contributed substantially to petitioner's subjective fear of prosecution. If this, in itself, constituted a "reasonable apprehension," the Commissioner of Internal Revenue would always be the winner in civil tax litigation over factual issues. In *381 such litigation petitioners are called upon in court to explain under oath disputed items of income or deductions reported on their returns. It is most uncommon, to say the least, for such explanations to generate perjury prosecutions. Petitioner's exposure to a perjury charge was not shown to be any greater than that of the "millrun" Tax Court petitioner who seeks to defend his reported deductions. Petitioner also complained of a lack of compliance by respondent with his own audit procedures, and asserted that the deficiency for 1974 was therefore barred by the statute of limitations.The latter assertion is clearly without foundation. As conceded by petitioner at the trial, the notice of deficiency was mailed March 7, 1978, within three years from the due date of the 1974 return. And, as indicated by the Court at the trial, the Commissioner's procedural regulations are not mandatory, but are only directory. Thus, even though it be assumed that the Commissioner failed to follow his procedural regulations, such failure will not invalidate a notice of deficiency; nor will the Court inquire *382 into the propriety of his motives or the circumstances surrounding his failure to adhere to such regulations. E.g., Luhring v. Glotzbach,304 F.2d 560, 563-564 (4th Cir. 1962); Schwager v. Commissioner,64 T.C. 781, 787 (1975); Flynn v. Commissioner,40 T.C. 770, 772-773 (1963); Crowther v. Commissioner,28 T.C. 1293, 1301 (1957). In addition, petitioner contends that the deficiencies in 1975 were effectively conceded in a notice of overpayment which was dated and sent to petitioners after their petition to this Court had been filed and answered. The notice stated that petitioners had overpaid the tax reported on their 1975 return by $70.00 and that this amount plus interest was being applied to their 1977 tax liability. Although the basis for respondent's overpayment notice is not clear, it has been long established that a refund of taxes originally collected through over-withholding or over-estimation is not a final determination of tax liability which prevents respondent from determining a deficiency. Stierhout v. Commissioner,24 T.C. 483 (1955). *383 It is true that the issuance of the overpayment notice, apparently through some administrative error, did not comply with the terms of section 6512, which provides that no credit or refund shall be made (with certain exceptions inapplicable here) after the filing of a Tax Court petition. Nevertheless, such an action by respondent cannot serve to deprive this Court of jurisdiction once a deficiency notice has been issued and a proper petition filed. Cf. Hannan v. Commissioner,52 T.C. 787 (1969). Though the overpayment notice may seem to petitioner to indicate a position inconsistent with that in the earlier notice of deficiency, concession of the 1975 issues in the Tax Court can be made only through a stipulation of no deficiency by respondent's counsel. Petitioner had the burden of proof as to his entertainment expense, club dues, and travel deductions. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a) of this Court's Rules of Practice and Procedure. He failed to carry this burden and we sustain respondent's determination in all respects *384 except the claimed office-at-home expenses, to the extent set forth below. Petitioner, a salesman for a medical supply business, stored supplies in his basement and conducted business from his personal residence as well. Respondent allowed him a 10 percent usage of his home for business purposes. Petitioner established to the Court's satisfaction that he should have been allowed 15 percent business usage for 1974 and 1975, and we so hold. Petitioner also asserted that the deduction for business usage should have been based upon fair rental value of the home, but a similar contention was rejected in Montogomery v. Commissioner,64 T.C. 175, 182 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). Petitioner claimed alternatively that if we should reject his fair rental value approach for determining the value attributable to business usage (which we do, following Montgomery), respondent erred in attributing a 35 year remaining useful life to the home, in failing to include water and sewer charges in total home expenses ($71.36 in 1974 and $102.88 in 1975) and in failing to compute depreciation on an accelerated method. We hold for petitioner as *385 to includability of the water and sewer charges in the total household expenses in the respective amounts above set forth. [5] With respect to the useful life of the home and the method of depreciation, petitioner used a 35 year life in his returns and took straight line depreciation. There is nothing in the record that would support a determination of a shorter useful life. As to the depreciation method, even if we were to assume, contrary to respondent's contention, that some method other than straight line were available for determining the usage value for an office at home, a declining balance method may not even be elected on an amended return, let alone when asserted for the first time at trial, unless the selection of method on the original return was "an erroneous selection of a legally unavailable method." Foley v. Commissioner,56 T.C. 765 (1971). See also sections 1.167(b)-0(c) and 1.167(e)-1(a), Income Tax Regs. The straight line method used by petitioner on his return was, obviously, a legally available one and the Court cannot order a change from that method. *386 Accordingly, we hold that petitioner used 15 percent of his home for office purposes in 1974 and 1975, that petitioner is entitled to include water and sewer expenses of $71.36 and $102.88 in his total home expenses for such respective years; and that in all other respects office-at-home adjustments made by respondent are sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioner presented no facts at trial and offered no argument on brief in support of his 4th Amendment↩ claim.
4. Having examined the numerous cases cited in petitioner's brief, we can find no authority which indicates a conclusion contrary to the above cited cases in civil litigation, where there is no reasonable apprehension of incrimination.↩
5. We make this determination without reference to certain cancelled checks and other evidence which were submitted to the Court after the record in this case was closed.↩